Argued March 24, decided May 12, 1908.

## DEITZ v. STEPHENSON.

[95 Pac. 803.]

SPECIFIC PERFORMANCE—CONTRACTS ENFORCEABLE—CONTRACT FOR PER-
SONAL SERVICES.

1. A contract between plaintiff and defendant recited that plaintiff had
agreed to purchase from defendant a fourth interest in hotel property for a
specified sum, and bound defendant to procure for plaintiff the position of
manager of the hotel at a specified compensation, provided defendant
obtained control of all the stock of the corporation owning the hotel, and,
should he fail to get control, a new corporation should be formed, of which
plaintiff should have a fourth of the stock and defendant three-fourths. *Held*,
that the contract did not create a partnership in the hotel business and
created only a personal obligation on the part of defendant to sell a fourth
interest, and plaintiff, on being removed from the position of manager, could
not, in a suit for the specific performance of the contract, compel his restora-
tion to such position.

SAME—CONDITIONAL CONTRACTS.

2. The specific performance of a conditional contract will not be decreed,
unless the condition has been performed.

SAME—CONTRACT FOR SALE OF CORPORATE STOCK—ENFORCEMENT.

3. Equity may compel specific performance of a contract to sell corporate
stock, where the value of the stock is not easily ascertainable, or where the
stock is not readily obtainable elsewhere, or where there is some reasonable
cause for the buyer requiring a delivery of the stock contracted for ; but
where the stock contracted for is easily obtained in the market, and there are
no particular reasons why the buyer should have the particular stock, he is
left to his action for damages.

SAME—CONTRACTS ENFORCEABLE.

4. Before specific performance of an agreement to take or deliver corpo-
rate stock may be decreed, it is necessary that the agreement should not
involve any breach of trust, nor include the performance by either party of
obligations the performance of which equity cannot practically enforce.

SAME—REMEDY MUST BE MUTUAL.

5. Unless equity can decree specific performance of the whole contract,
it will not interfere to enforce any part of it, and specific performance will
not be enforced unless the remedy is mutual.

CONTRACTS—CONSTRUCTION—MUTUALITY OF OBLIGATIONS.

6. A contract for the sale of corporate stock, which binds the buyer to
furnish to the seller the personal services of himself and wife, involves a cor-
relative duty on the part of the seller to employ the buyer and his wife, so
that there is a mutuality of obligations.

SPECIFIC PERFORMANCE—CONTRACTS ENFORCEABLE—MUTUALITY OF
REMEDY.

7. A contract for the sale of corporate stock, which binds the buyer to
furnish to the seller the personal services of himself and wife, and which
binds the seller to employ the buyer and his wife, cannot be specifically
enforced at the suit of the buyer to compel the delivery of the stock con-
tracted for, since the seller cannot maintain a suit to compel the specific per-
formance of the buyer's agreement to render the personal services of himself
and wife.

SAME—TENDER.

8. A contract gave a buyer an option to purchase, within a specified time, corporate stock for a fixed price on payment of a part of the price in cash and on the payment of the balance within a specified time; the seller to retain the stock as security for the payment of the balance. The buyer made a written offer to pay the cash part of the price for the stock. He did not show that he was able at that time, or at any time since, to pay such part of the price, and he did not pay such part into court. *Held*, that he was not entitled to compel specific performance of the contract by compelling the seller to deliver to him the stock, at least in the absence of a tender or a readiness and willingness to pay the balance of the price.

SAME—PLEADINGS.

9. A contract for the purchase of stock in a corporation owning a hotel stipulated that the buyer should be employed as the manager of the hotel at a fixed salary, and that in case the hotel made a profit he should be entitled to have one-fourth thereof credited on the balance due on the stock contracted for. He was removed from his position as manager, and brought a suit to specifically enforce the contract by requiring his restoration to the position of manager and for the transfer and delivery to him of the corporate stock. There was no allegation that any profits had accrued or were due, nor was there any claim made for damages, and he made no tender of performance by alleging his willingness and ability to pay any balance that might be found due after applying profits to the liquidation of the debt. *Held*, that the court was without authority to enter a decree providing for the appointment of a referee to take an accounting of damages and of the earnings and profits of the hotel, and for the application of the same on the stock purchased, and the payment of the balance, if any, to the buyer.

From Multnomah: ALFRED F. SEARS, Judge.

Statement by MR. COMMISSIONER SLATER.

This is a suit to enforce the specific performance of the following contract:

"This agreement made and entered into this 7th day of November, A. D. 1904, by and between H. L. Stephenson, party of the first part, and A. J. Deitz, party of the second part, witnesseth that:

Whereas, the party of the second part has this day agreed to take a one-fourth interest in the property and contents of the Scott Hotel, located on the corner of Seventh and Ankeny streets, in the City of Portland, for four thousand dollars ($4,000), paying herewith seventeen hundred and fifty dollars ($1,750), the balance to be paid as follows: The said second party and his wife are to take charge of the hotel at a salary of $125 per month, $60 of which amount is to be retained by said second party to meet his current expenses, and the balance is to be applied on the purchase price of the said fourth interest in the furnishings and property in said hotel. If an adjustment or settlement is made between the

stockholders of the Scott Hotel Co., so that the first party gets control of all the stock of said corporation, then the second party is to have one-fourth of the stock of said corporation, fully paid and nonassessable upon the completion of the payment of the $4,000 herein provided for. But should the stockholders of said Scott Hotel Co. be unable to adjust their matters, a new corporation is to be organized for $16,000, and the second party is to have one-fourth of the stock and the first party herein is to have the other three-fourths. Said second party is to pay for said one-fourth interest as herein provided. If a new corporation is organized, all of said property in said hotel is to be turned over to the said corporation by the said first party, it being understood and agreed that the said first party is to protect the fourth interest of said second party from debts and liabilities of the Scott Hotel Co.

It is further agreed that in case the hotel does not meet its current expenses, the said $65 of salary that is to be applied on the purchase price of the stock is to be applied and contributed towards meeting the deficiency in expenses, and in case the hotel makes a profit the second party's profit, which is one-fourth of the total profits, in addition to the $65 is to go to liquidate the balance of the purchase until the same is fully paid.

It is further agreed that the second party shall have the right to purchase an additional one-fourth interest in said company at any time within sixty days from the date of this agreement for $4,000, $2,000 cash, and the balance on or before six months, the same to be secured by the stock of the corporation; and in case the said second party desires to purchase at any time after the sixty days and prior to six months he may do so by paying $4,500.

It is further agreed that in case the said parties hereunto or the corporation they shall hereafter form, shall sell out their interest in the Scott Hotel Co., the second party herein shall be entitled to whatever profits arise upon the said one-fourth interest in the stock.

It is further agreed that said property shall not be sold for less than $17,000, and that upon such sale the second party is entitled to one-fourth of the profits in addition to whatever amount he has paid upon the purchase price of his one-fourth interest.

In witness whereof, the said parties to this agreement have hereunto set their hands and seals, in duplicate, the day and year first above written.

H. L. Stephenson.  [Seal.]
A. J. Deitz.  [Seal.]"

After alleging the incorporation of the defendant, Scott Hotel Co., and the making of the contract, plaintiff avers: That on January 7, 1905, Stephenson extended the option therein given by the following writing:

"Portland, Oreg., Jan. 7, 1905.
I hereby agree to extend the option given A. J. Deitz for one-half interest in Hotel Scott for thirty days from above date, terms as per original agreement.

H. L. Stephenson."

That on the date of the signing of the contract, and in pursuance thereof, he paid Stephenson $1,750; that thereupon Stephenson and the Scott Hotel Co. put plaintiff in charge of said hotel, and that he and his wife managed it until February 11, 1905, when Stephenson wrongfully entered and by force and violence dispossessed them and took charge and possession of the property, books, and assets of the business, against the will and protest of plaintiff; that between November 7, 1904, and February 5, 1905, Stephenson caused to be made such adjustments and settlements between the stockholders of the defendant company that he obtained full and absolute control and management thereof; that each month plaintiff has applied $65 of his salary on the purchase price of this property; that on February 6, 1905, plaintiff elected to purchase the additional one-fourth interest in defendant corporation, and tendered to Stephenson $2,000 in payment of the first installment of the purchase price; but that Stephenson has refused to sell or transfer to plaintiff any of the stock of the company, and has repudiated his contract, and the plaintiff has, at all times, fully done and performed all of the covenants and conditions of the said agreement and the supplementary extension thereof to be by him done and performed.

That the Scott Hotel Co. was fully informed and knew of the making of the said contract and consented thereto and to the making of the payments set forth by plaintiff, and joined defendant Stephenson in the partial performance alleged; that the interest, which the company has or claims to have in the hotel or hotel business and lease, is inferior and subordinate to plaintiff's rights under said agreement, and that defendant Stephenson is so recklessly, carelessly, and badly managing the hotel and hotel business that the same is rapidly deteriorating in value, and, if continued, will inflict great and irreparable loss and damage upon plaintiff, and destroy his rights under the agreement.

A decree is asked requiring Stephenson to return to plaintiff and his wife the charge and management of the hotel, and to transfer and deliver to plaintiff one-fourth of the capital stock of defendant corporation; that a receiver be appointed to conduct the business pending the suit; and that defendants be enjoined from taking charge thereof and from interfering or meddling therewith.

The corporation demurred to the complaint upon general grounds, which being overruled defendants answered separately. Stephenson, after denying all the averments of the complaint, excepting the incorporation of the company, for an affirmative defense alleges, in effect, that prior to November 7, 1904, defendant company had been conducting an hotel in the City of Portland, known as the "Scott Hotel," under a lease, and that it owned the fixtures and had purchased, on the installment plan, furniture used therein; that about November 1st, the corporation being financially involved, and he being a large creditor of, and stockholder in, the corporation, and a guarantor for the payment of the rent, to protect himself he entered into possession of the hotel, secured a new lease of the premises in his own name, and conducted the business for the interest of himself and the corporation;

that relying upon plaintiff's representations alleged to have been made to defendant, to the effect that he was a competent and experienced hotel man, a competent and skillful bookkeeper, and that he was sober, honest, and industrious, defendant made, with plaintiff, the contract set forth; that these representations were false, and that plaintiff has been dissipated and intemperate, negligent, and dishonest in his management of the hotel; that he did not keep true or correct accounts and misappropriated the funds received by him from the business and converted them to his own use; that prior to the alleged tender, defendant notified plaintiff that, on account of the latter's incompetency, dishonesty, and misappropriation of funds, he would not further comply with the original contract, or with the supplementary agreement, and would not sell, transfer, or deliver to plaintiff any stock of the corporation; that thereupon he notified plaintiff that on account of his conduct he would discharge him from the management of the hotel, and upon an accounting of the money received by plaintiff, as manager, he (defendant) would repay plaintiff the $1,750 received and his salary for the time he served as such manager; that defendants, acting together, discharged plaintiff and employed another manager to conduct the hotel for them; that plaintiff received between $4,000 and $5,000 while acting as manager of the hotel, but has accounted for no more than $2,000. He prays, first, for a dismissal of the complaint, and, second, for the annulment of the contract, and for an accounting between plaintiff and defendant, and that defendant have judgment for all moneys unaccounted for after crediting plaintiff with the sum of $1,750 received by defendant from plaintiff. The corporation in its answer by general denial controverts all the complaint, excepting its own incorporation, and for its first affirmative defense alleges, in effect, that plaintiff was its employee and violated its instructions and did not faithfully and diligently serve the company,

as manager, and for that reason on February 11th discharged him from its employment. For its second defense, it alleges misrepresentation and fraud of plaintiff in procuring employment as manager to the same effect as alleged by defendant Stephenson, and for that reason, also, it discharged him from its service. And as a third defense, it alleges, in effect, that, at the time plaintiff was discharged from its employ, he had a large amount of money belonging to the corporation, the exact amount of which it is unable to state, for the reason that plaintiff has not kept true and correct accounts of the cash received and disbursed by him; that plaintiff has failed and refused to pay the same over to it. It prays, first, that the complaint be dismissed, and, second, for an accounting. By his reply to the answer of Stephenson, plaintiff denies all of the affirmative matter therein, except that plaintiff was ejected from the hotel and deprived of the management thereof, and he denies all the new matter of the answer of the corporation, and affirmatively alleges that the rights of the Scott Hotel Co. in said hotel are subordinate and inferior to the claims and ownership of Stephenson, and that, since the making of the agreement, it had no control over or management of the hotel.

After a large amount of testimony had been taken, findings were made, and, based thereon, a decree was entered in plaintiff's favor, to the general effect: That the contract be specifically enforced, so far as may be practicable for plaintiff's benefit, but it was not deemed practicable to put him and his wife back into the possession of the hotel and hotel business. An accounting, however, was ordered to ascertain plaintiff's damages resulting from his being ousted and the refusal of defendants to allow him to continue in charge and possession, and that, when ascertained, the amount thereof be applied upon the balance due Stephenson for the one-fourth of the capital stock of the hotel company, first in said agreement

mentioned. That plaintiff recover one-fourth of the profits earned by or properly belonging to the one-fourth of the capital stock first purchased, and also profits on the second one-fourth of the capital stock, under the option from February 6, 1905, the date of the tender. That after the ascertainment of such damages and profits, plaintiff have 40 days in which to tender payment to Stephenson such portion, if any, above the amount so allowed, to complete the payments for such capital stock according to the contract. That thereupon Stephenson shall specifically perform the contract by delivering to plaintiff one-half of the capital stock of the corporation. And that Stephenson shall be held trustee of plaintiff's rights in the stock. From this decree each of defendants have appealed.    REVERSED: SUIT DISMISSED.

For appellant there was a brief with oral arguments by *Mr. Joel M. Long* and *Mr. George G. Gammans.*

For respondent there was a brief with oral arguments by *Mr. Thomas N. Strong* and *Mr. James Gleason.*

Opinion by MR. COMMISSIONER SLATER.

1. This suit, it seems, was brought upon the theory that, by the legal effect of the contract, plaintiff had bought from defendant Stephenson a one-fourth interest in the furniture, fixtures, and business of the Hotel Scott, in the City of Portland, and that Stephenson was the owner of the remaining three-fourths; that having been invested by the latter with the possession thereof, as manager, and afterwards deprived of that possession by him, in violation of the contract, plaintiff is entitled in equity to be restored to that possession, and to be protected in the management of the business against any interference therewith by Stephenson or the corporation, to that extent specifically enforcing the contract, and thereby enabling plaintiff to perform his part of the contract, and by his labor pay for the property he bought. This could not possibly be done except upon the allegation and proof

by plaintiff that by the terms of the contract, Deitz and Stephenson had agreed to become partners in the business of conducting the hotel, and that the subsequent acts of the latter were in fraud of his rights: High on Injunction (4 ed.), § 1330. But there is no averment of the complaint that such contractual relationship existed between the parties, neither was it expressly or impliedly created by the terms of the agreement. As we interpret the instrument on which the suit is based, it creates no more than a personal obligation on the part of Stephenson to sell, transfer, and deliver to Deitz one-fourth of the capital stock of the Scott Hotel Co. for an agreed price, and to procure for him the position of manager thereof, provided the former obtains control of all the stock of the corporation; but, should he fail to get control, then a new corporation is to be formed with a capital of $16,000, Deitz to have one-fourth of the stock, and Stephenson three-fourths, and the latter guarantees that all of the property in the hotel shall be turned over to such new corporation freed and discharged of any debts or liabilities of the Scott Hotel Co. From this view it results that Deitz did not become invested with any title to any part of the hotel or hotel business or any right to the continued possession thereof, as against the corporation; but he occupied the position of an employee of the corporation, and was subject to its direction and control and liable to be discharged by it at its pleasure: *Christensen* v. *Borax Co.* 26 Or. 302 (38 Pac. 127).

The lower court declined to enforce specifically the contract to the extent of restoring plaintiff to the possession and management of the hotel, or to enjoin defendants from interfering therewith because of the impracticability of enforcing such a decree, and in any event this conclusion was correct; but it did decree a transfer and delivery of one-half of the capital stock by Stephenson upon certain express terms and conditions. The only question, then, to be determined is whether Stephenson

is in equity bound to make delivery of the stock at all, and, if so, when and upon what terms.·

2. As to the one-fourth first purchased, it was to be delivered only in the event that Stephenson "gets control of all the stock of said corporation," and upon "completion of the payment of the $4,000 herein specified for"; that is, by taking charge of the hotel, managing it, and applying $65 per month of the salary of himself upon the balance of the purchase price due. This is a conditional contract, and the rule is well settled that specific performance will not be decreed unless such condition has occurred or has been performed: 25 Am. & Eng. Ency. of Law (2 ed.), 41. The first of these conditions is admitted to have been accomplished.

3. That a contract for the sale of shares of private corporation may, under certain circumstances, be the subject of equitable jurisdiction for its specific performance, is well established. This occurs where the value of the stock is not easily ascertainable, or the stock is not to be obtained readily elsewhere, or there is some particular and reasonable cause for the vendees requiring the stock contracted to be delivered; but if the stock contracted to be sold is easily obtained in the market, and there are no particular reasons why the vendee should have the particular stock contracted for, he is left to his action for damages: 1 Cook, Stock & Stockholders, § 338.

4. And in order that specific performance of an agreement to take or deliver shares of stock in a company may be decreed, it is necessary that the agreement should not involve any breach of trust (Frye, Specific Perf. [2 Am. ed.] § 388), nor include the performance by either party of obligations, the performance of which a court cannot practically enforce: 1 Cook, Stock & Stockholders, 462, note.

5. It was held, in *Ross* v. *Union Pac. Ry. Co.* 1 Wool. 26 (Fed. Cas. No. 12,080), by Mr. Justice MILLER, that unless the court can decree specific performance of the

whole contract it will not interfere to enforce any part of it. And in *Peto* v. *Brighton Ry. Co.* 1 H. & M. 468, it was held that an equity court has no jurisdiction to decree the specific performance of a contract calling for the delivery of shares of stock, the consideration for which on the part of plaintiff is the execution of certain works which the court is unable to superintend.

6. Here it is urged by the defense that the part performance by plaintiff involves a breach of trust and confidence by him, and, if so, that would destroy any right in the plaintiff to have specific performance, if any ever existed, by the defendant. Most of the testimony in the record was taken on this issue, but it is not necessary that we should examine into it to determine the issue on that point, for, assuming that a specific performance of the contract might be decreed by a court of equity, if this contract called for only the sale of shares of stock for a money consideration, yet we find that there is joined with that an obligation on the part of plaintiff to furnish the personal services of himself and wife in the management of the hotel at a salary of $125 per month, of which $65 was to be applied on the purchase price of the stock. This obligation necessarily involves a correlative one resting on the latter to employ, or to secure, plaintiff and his wife employment by the corporation in that capacity for at least a sufficient length of time to enable plaintiff to liquidate his liability for this balance of the purcahse price of this stock. Here is mutuality of obligation, but is there also mutuality of remedy? Specific performance will not be enforced against one party if it cannot be so enforced by the other. The remedy must be mutual: *Whiteaker* v. *Vanschoiack*, 5 Or. 113; *Barrett* v. *Schleich*, 37 Or. 613 (62 Pac. 792) ; 2 Beach, Mod. Eq. Jur. 585; Pomeroy, Specific Perf. §§ 162-3. But "contracts for personal services, where the acts stipulated for require special knowledge, skill, ability, experience, or the exercise of judgment, discretion, integrity, and the like personal

qualities on the part of employees, or where the services are confidential, in short, wherever the full performance, according to the spirit of the agreement, rests in the individual will of the contracting party, courts of equity have no direct and efficient means of affirmatively compelling a specific performance": Pomeroy, Specific Perf. § 310.

7. By agreement of the parties the contractual obligation of the plaintiff that "he and his wife are to take charge of the hotel" means to personally supervise and manage it. This requires the possession of experience, personal skill, and the exercise of judgment, and involves integrity and the relationship of trust and confidence. And it is not susceptible of specific enforcement by a court of equity. It has been alleged by defendant Stephenson, and established by his testimony, that the controlling cause on his part for entering into the contract was the necessity of securing a competent, experienced, and honest manager to conduct the hotel, and was not merely a desire on his part to dispose of his stock. This becomes, then, a material consideration of the sale, and having no power to compel plaintiff to specifically perform that part of his contract according to the intent of the parties, in favor of defendant, a court of equity should not enforce it in other respects against the latter. Nor is the mere offer to perform or tender of performance of personal services, the performance of which could not be compelled in equity, sufficient to relieve the case of the lack of mutuality as to remedy: *Cooper* v. *Pena,* 21 Cal. 403; *Alworth* v. *Seymour,* 42 Minn. 526 (44 N. W. 1030); *Anson* v. *Townsend,* 73 Cal. 415 (15 Pac. 49); *Los Angeles Co.* v. *Occidental Oil Co.* 144 Cal. 528 (78 Pac. 25).

8. As to the second one-fourth of the stock agreed to be sold by Stephenson for $4,000, plaintiff is not bound to purchase at all by the contract, but had an option to take within 60 days (which he says was extended) upon payment of $2,000, and the balance on or before six

months, the same to be secured by the stock of the corporation, and, in case he desired to purchase after the 60 days and prior to six months, he might do so by paying $4,500. He alleged he made a tender of $2,000 on February 7, 1905, and submits in proof thereof an offer in writing, dated February 7, 1905, to pay that amount. There is no proof or allegation to the effect that at the time he made the written tender he was able to pay in accordance with its terms, nor that at all or any times since he has been ready, able, and willing to perform, which is essential to a right to specific performance: *McCourt* v. *Johns,* 33 Or. 561 (53 Pac. 601). Nor has he paid into court the amount of such tender. Moreover, plaintiff would not be entitled to an immediate delivery, if all such had been strictly done and complied with, for, by the terms of the contract, the stock was to be held by the vendor as security for the payment of the balance of the purchase price, and there is no pretense of a tender or offer or a readiness and willingness to pay the balance. Until that is done, plaintiff is in no position to demand a delivery of the stock.

9. It seems that because the contract included a provision that, in case the hotel makes a profit, the second party would be entitled to one-fourth thereof to be credited, together with $65 per month of plaintiff's salary, upon the balance due on the stock, the court assumed that there may have been profits, together with damages which plaintiff was supposed to have suffered by his dismissal, sufficient to liquidate his indebtedness to defendant, and on that basis the decree provided for the appointment of a referee, to take an accounting of damages and of the earnings and profits of the hotel, and if any such were found to be applied on this stock purchase, and the balance, if any, to be paid by plaintiff in 40 days. But all this is mere speculation. There is no basis for it in the pleadings. There is no allegation that any profits have accrued or are due, nor is there any claim made therein for damages, and, if there were, plaintiff makes no tender of performance in his complaint by alleging his willingness and ability to pay any balance that may be found due after applying profits to the liquidation of his debt. The record contains no issues in the pleadings or facts to sustain the decree: *Clarno* v. *Grayson,* 30 Or. 111-143 (46 Pac. 426.)

For these reasons the decree should be reversed, and the suit dismissed.          REVERSED: SUIT DISMISSED.