Argued February 11, decided February 17, 1914.

# OREGON FISHERIES CO. v. ELMORE PACKING CO.*

(138 Pac. 862.)

**Customs and Usages—Pleading—Necessity.**

1. One relying on a custom must plead it, and state that it was known to the party to be affected, or state facts authorizing the conclusion that it was of such general notoriety that the other party would be presumed to have knowledge of the usage.

[As to the effect and proof of customs and usages, see note in 18 Am. Rep. 204.]

**Shipping—Navigation—Injuries—Evidence—Admissibility.**

2. Under Section 727, L. O. L., providing that evidence may be given of usage to explain the true character of a contract, but usage is never admissible except as a means of interpretation, where an action is brought under Section 5203, authorizing the recovery from any person in the control of water craft and his employer for intentional or negligent navigation resulting in destruction or injury to the property of another, evidence that there was a general usage that fishermen delivering fish to any cannery were in the employ of the cannery is not admissible.

**Master and Servant—Existence of Relation.**

3. Where a packing company loaned its boat to a fisherman under an agreement that he should sell the fish caught to the company, the

---

*On the general question, Who are independent contractors, see notes in 65 L. R. A. 445 and 17 L. R. A. (N. S.) 371.   REPORTER.

fisherman doing his work in his own way, he is not an employee of the company; the statute being penal in its nature, and therefore strictly construed.

**Master and Servant — Existence of Relation — "Independent Contractor."**

4. An "independent contractor," as distinguished from a mere employee, is one who carrying on an independent business, contracts to do a piece of work according to his own methods, and that being subject to the control of his employer as to the means by which the result is to be accomplished, but only as to the result of the work.

From Tillamook: Percy R. Kelly, Judge.

Department 1. Statement by Mr. Justice Burnett.

This is an action by the Oregon Fisheries Company and Ole I. Dromnes against the Elmore Packing Company and Grant Marshall.

The plaintiff Oregon Fisheries Company, to be designated as the Fisheries Company, and the Elmore Packing Company, to be called the Packing Company, are both corporations. The plaintiff Dromnes is said by the amended complaint to have been a fisherman in the employ of the Fisheries Company, the other plaintiff. That pleading also charges that the defendant Marshall was a fisherman in the employ of the Packing Company, the other defendant, and was the agent of his codefendant in the operation of a "sailboat," and was in full control of the same, and further alleges that the "Packing Company" is the employer of said other defendant Grant Marshall, and is the sole owner of "said motor boat." The most essential allegation of the amended complaint is this: "That on the evening of September 24, 1912, on or about the hour of 6 o'clock in the evening of said day, the defendant did intentionally, willfully, maliciously, and negligently operate the aforesaid motor boat, the property of the other defendant herein, in such a manner as to run into and strike amidships the boat owned by one of the plaintiffs herein, to wit, the Oregon Fisheries Company, and operated by the other of the

plaintiffs herein, to wit, Ole I. Dromnes''; and, further, that by reason of the collision mentioned the boat belonging to the Fisheries Company and operated by Dromnes was damaged in the sum of $200.

The answer of the Packing Company traverses all the allegations of the complaint. The defendant Marshall defaulted. A jury trial resulted in a verdict in these words: ''We, the jury in the above-entitled civil action, find for the plaintiffs in the sum of $120.'' The Circuit Court rendered judgment upon such verdict in favor of both plaintiffs against both defendants for three times the amount of the verdict, or $360, and the Packing Company appeals.          Reversed.

For appellant there was a brief over the names of *Mr. Edmund B. Tongue* and *Mr. Webster Holmes,* with an oral argument by *Mr. Tongue.*

For respondents there was a brief over the names of *Mr. Sidney S. Johnson* and *Mr. Elmon A. Geneste,* with an oral argument by *Mr. Johnson.*

Mr. Justice Burnett delivered the opinion of the court.

This action is brought under Section 5203, L. O. L., reading as follows: ''If any person in the control of any steamboat or other water craft shall intentionally or negligently conduct or navigate the same so as to destroy or injure the property of another, such person and his employer shall each be liable in treble damages for the property so injured or destroyed, and such damages shall be a lien on such boat.'' This section is the full text of an act of the legislative assembly, entitled ''An act to prescribe the amount of damages in case of injury or destruction of property by persons in the conduct or management of a steamboat or other

water craft," approved October 20, 1876. At the outset it is open to grave question whether, under such a title, purporting only to prescribe the amount of damages, the legislature could go further and impose a new liability hitherto unknown to the law in such cases in the form of penalty for treble damages, instead of merely compensatory damages.

1. The principal contention at the hearing, however, was whether or not the court ruled correctly about the defendant Marshall being in the employ of the answering defendant. The only evidence offered by the plaintiffs on that point was that of three witnesses, to the purport that there was a general usage on Tillamook Bay that fishermen delivering fish to any cannery were in the employ of such cannery or packing company. It will be remembered that no plea of custom or usage appears in the complaint. If one would rely upon a custom, he should plead the same, and not only so, but should state that the custom was known to the party to be affected by the same, or should allege facts authorizing the conclusion that it was of such general notoriety that the other party would be presumed to have knowledge of the usage.

2. Moreover, it is laid down in Section 727, L. O. L., that evidence may be given of "usage, to explain the true character of an act, contract, or instrument, where such true character is not otherwise plain; but usage is never admissible except as a means of interpretation." It thus appears that custom is to be used in evidence only as a means of interpretation of a contract, and not for the purpose of proving the agreement itself. The consequence is that if nothing but custom be shown, there is no proof of a contract arising between the two parties: *Holmes* v. *Whitaker*, 23 Or. 319 (31 Pac. 705); *Savage* v. *Salem Mills Co.*, 48 Or. 1 (85 Pac. 69, 10 Ann. Cas. 1065); *Barnard* v.

*Houser,* 68 Or. 240 (137 Pac. 227).   The Circuit Court was in error in refusing to take from the jury the evidence of custom alluded to.

3. It is claimed, however, that the contract of employment was proven by the manager of the Packing Company.   His testimony was to the effect that at the beginning of the season his company loaned to Marshall one of its boats, and advanced to him a net and supplies, for which they charged him on account, and that the agreement was that Marshall should dispose of the fish he caught during the season to the Packing Company at the prevailing market rates. The following excerpt is taken from the manager's testimony:

"Q. State whether or not Marshall, during this time, was at liberty if he saw fit, to deliver fish any place else; could he?

"A. He could.   All we could do in a case of that kind would be to recall the boat.

"Q. You may state whether or not Marshall was to receive any wages or salary; if so, state what it was.

"A. He was not in any way, shape or manner, except the usual price the cannery paid for fish to one and all fishermen.

"Q. You may state whose fish they were previous to the delivery to the cannery, if you know.

"A. Marshall's fish."

On this evidence the Circuit Court assumed to charge the jury as a matter of law that the Packing Company was the employer of Marshall, its codefendant.

"The relation of master and servant exists whenever the employer retains the right to direct the manner in which the business shall be done, as well as the result to be accomplished, or, in other words, not only what shall be done, but how it shall be done": 26 Cyc. 966.

It is said in Wood's Master and Servant, Section 317, that:

"The real test by which to determine whether a person is acting as servant of another is to ascertain whether, at the time when the injury was inflicted, he was subject to such person's orders and control, and was liable to be discharged by him for disobedience of orders or misconduct."

4. An independent contractor, as distinguished from a mere employee, is one who, carrying on an independent business, contracts to do a piece of work according to his own methods, and without being subject to the control of his employer as to the means by which the result is to be accomplished, but only as to the result of the work: 26 Cyc. 1546. In a certain sense every person who contracts to render services for another is an employee. We speak of employing one to erect a large building, to construct a bridge, or to build a railroad; but, where the person thus employed is only responsible for the finished result, and is not subject to control as to details, it is common knowledge that, as a matter of law, he is not held to be the servant or agent of the employer. The statute under which this action is brought is penal in its nature in that it imposes three times the actual damages upon a person offending against its precepts. Therefore it must be construed strictly. It ought not, in justice, to be extended, or made to apply to a third party, unless the one actually inflicting the damage was the agent or servant of such third party. However, in the absence of statute, it is only by the relation of agency, or master and servant, that one party can be made responsible for the acts of another. It is plain that the enactment in question cannot be justly construed to apply to any other relation. The fact that a boat was loaned to Marshall, and that he was charged on account for gear, supplies, etc., advanced to him establishes only the relation of debtor and creditor between the two defendants. Marshall had a right to

contract for the future sale and delivery of fish which he might afterward acquire, and this would only constitute an executory contract of sale of personal property. In neither of the two cases does the relation of master and servant, or employer and employee, arise. Such connection cannot be predicated upon the fact that the Packing Company had a right to recall the boat in case Marshall chose to sell his fish to some other person. That only amounts to a rescission of the contract by one party on its breach by the other. In any event, under the testimony narrated in the bill of exceptions, Marshall was responsible to the Packing Company only for a finished result. The company had no control over him as to details or methods. They had no power to discharge him or to prevent him delivering to the company enough fish to cancel his indebtedness. He had a right to fish by hook or gig, or net, or spear, and was not compelled to use the boat loaned to him, but could have employed other means to catch the fish. In none of these matters had the Packing Company any control over the conduct of its codefendant.

The case is clearly distinguishable from that of *Christensen* v. *Pacific Coast Borax Co.*, 26 Or. 302 (38 Pac. 127), where the plaintiff was set to work in the mine of the defendant to get out ore and deliver it into the bin of the defendant mining company at a certain price per ton. Even in that case it was not necessary to hold that the defendant was the employer of the plaintiff. The principle decided was that, where there was nothing said about how long the work of mining should continue, whether profitable or not to either party, the contract might be discontinued at the option of either, on reasonable notice to the other.

Neither is *Deitz* v. *Stephenson,* 51 Or. 596 (95 Pac. 803), applicable to the case in hand, for there the plaintiff was employed on a salary to manage the hotel owned by a corporation, of which the defendant was the principal stockholder. The plaintiff there was clearly a salaried servant of the company, liable to discharge at any time upon failure to properly perform his duties. The court was in error in instructing the jury as a matter of law that the Packing Company was the employer of Marshall so as to render it liable in treble damages for his malfeasance. Other questions were presented at the hearing, which we deem it unnecessary to discuss.

The judgment is reversed.              REVERSED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE MOORE and MR. JUSTICE RAMSEY concur.