Argued at Pendleton May 2, affirmed June 21, argued on rehearing November 3, reversed on rehearing November 22, 1921.

## SHAW WHOLESALE CO. *v.* HACKBARTH.

### (198 Pac. 908.)

**Contracts—Party Suing for Breach must Generally Allege Performance or Readiness to Perform.**

1. As a general rule, a complaint to recover damages for breach of contract must allege full performance or readiness and ability to perform on the part of plaintiff.

**Pleadings—Defective Complaint After Findings by Trial Court Construed in Favor of the Pleader—Complaint not Stating Cause of Action not Cured by Judgment.**

2. Under the statute giving the findings of the court in an action at law tried without a jury the force and effect of a verdict, and the rule that where defendant answers after his demurrer has been overruled the complaint is to be construed most strictly in favor of the pleader, a complaint will be sustained after a judgment for plaintiff on the findings of the court if it contains a defective statement of a cause of action, but not if it fails to state a cause of action.

**Sales—Buyer Need not Offer to Perform if Contract Repudiated by Seller Before Time for Delivery.**

3. . Where the seller definitely repudiated his contract for the sale of lumber before the time for delivery of the lumber, a complaint by the buyer to recover damages for the breach of the contract need not allege that the buyer offered to perform, or that he was ready and able to perform.

### ON REHEARING.

### (201 Pac. 1066.)

**Contracts—Offer Containing Promise for Consideration, Accepted by Promisee, Completes Contract.**

4. An offer containing a promise for a consideration to do an act which the promisor has a right to do, followed by an unqualified and unequivocal acceptance by the promisee, creates a contract.

**Contracts—Offer must Intend to Create Obligation on Acceptance.**

5. An offer, to be sufficient, must be one which is intended of itself to create legal relations on acceptance, and must be capable of creating a definite obligation.

**Contracts—Acceptance must be Unequivocal and Unconditional.**

6. The acceptance of an offer which completes a contract must be positive, unconditional, unequivocal and unambiguous, and must not change, add to or qualify the terms of the offer.

**Contracts—Additional Condition in Acceptance Rejects Offer and Makes Counter-offer.**

7. A purported acceptance of an offer which contains an additional condition is, in effect, a rejection of the offer and the making of a counter-offer, which becomes a binding contract only when accepted by the maker of the original offer.

**Contracts—Condition in Acceptance Which Would be Implied Does not Reject Offer.**

8. The insertion by the acceptor of a condition which does not qualify the offer in legal effect, because it is a condition which the law would imply, does not prevent the acceptance from completing the contract.

**Contracts—Writings Alone Determine Existence of Contract by Correspondence.**

9. Where it was conceded that all the negotiations for the alleged contract were in writing, the writings alone can be looked to to determine whether a contract resulted therefrom.

**Sales—Acceptance Specifying Sixty-day Payment Rejects Offer Fixing No Time for Payment.**

10. In view of Section 8205, Or. L., making payment and delivery concurrent unless otherwise specified, an acceptance specifying payment on 60 days' time was a rejection of an offer to sell goods which stated no time for payment.

**Sales—Acceptance Fixing Time of Delivery Rejects Offer Silent as to Delivery.**

11. An offer for the sale of lumber to be manufactured and delivered is rejected by an acceptance thereof which specifies delivery shall be made by a specified date, where there was no evidence that the date so fixed was a reasonable time for delivery.

**Sales—Delivery to be Made Within Reasonable Time Unless Otherwise Specified.**

12. Where the time of performance of a contract for the manufacture and sale of goods is not specified, delivery is to be made within a reasonable time, depending on the circumstances.

**Sales—Letter Indicating Belief Contract was Completed was not Acceptance.**

13. Where an offer to sell goods was rejected by a purported acceptance imposing additional conditions, a subsequent letter by

102 Or.—6

the seller, indicating a belief that a contract existed between him and the buyer, was not an acceptance of the counter-offer contained in the conditional acceptance.

### Contracts—Acceptance must be Communicated.

14. To constitute acceptance of an offer to make a bilateral contract, there must be an expression of the intention to accept by word, sign, or writing communicated or delivered to the person making the offer, or his agent.

### Customs and Usages—Must be Pleaded.

15. Before a custom can be relied upon it must be pleaded.

### Customs and Usages—Can be Resorted to to Construe Contract but not to Create it.

16. Evidence of a general custom in the trade with reference to which the parties are presumed to have contracted is admissible to aid in the construction of the contract which is proved to have been completed, but is not admissible to establish the existence of a contract not otherwise established.

From Wallowa: J. W. KNOWLES, Judge.

In Banc.

Plaintiff brings this action for damages for breach of a contract. The cause was tried by the court without a jury. From a judgment in favor of plaintiff defendant appeals.

The material facts alleged are as follows: Plaintiff is an Idaho corporation. Defendant A. Hackbarth is doing business as the Lapwai Lumber Company, in Wallowa County, Oregon. About April 4, 1917, the defendant "contracted and agreed with the plaintiff to sell plaintiff two hundred fifty thousand feet 8-4 shop lumber surfaced two sides of grades No. three and better at the quoted and agreed price of $26 for No. 3, $32 for No. 2 and $40 for No. 1; delivery to be made by September 15, 1917, on freight rate of 52 cents." The defendant neglected and refused to deliver any part of the lumber at any time. At the time agreed upon for the delivery of the lumber, and since, the market value thereof per thousand feet was as follows: $33.50 for No. 3; $40.50 for No. 2; and

$50.50 for No. 1. Plaintiff was damaged in the sum of $2,000. A general demurrer was filed to the complaint, which upon being overruled, defendant answered admitting the corporation character of plaintiff, and the name in which defendant was doing business, and denied the other allegations of the complaint. For a further answer the defendant pleaded that no note or memorandum in writing expressing the consideration of the alleged contract was ever subscribed by the defendant; that no part of the lumber alleged to have been contracted for was ever received or accepted by plaintiff, or paid for by plaintiff; and that the alleged contract is void within the statute of frauds. The reply put in issue the new matter of the answer. Upon the trial plaintiff sought to prove, over the objections and exceptions of counsel for defendant, the contract by the production of correspondence between the plaintiff and defendant, the gist of which, so far as material is as follows:

Plaintiff's Exhibit "A."

"Enterprise, Oregon, Mar. 21, 1917.
"C. R. Shaw Wholesale Co., Boise Ida.
"Gentlemen:

" * * I haven't any lumber to offer at the present time and regarding the shop lumber I would be willing to contract providing I got the price I am holding it for this on a 52¢ rate.

5/4 & 6/4 #1, $38.00.
"        "   #2, $30.00.
"        "   #3, $26.00.
$2.00 more for 8/4 #1 & 2 S2S.

"I expect this will look rather high to you, but according to what we have to pay for manufacturing our material this is only a fair price, and will stay with these prices until I see that conditions changes and I prefer selling 8/4 as I have contracted several

hundred thousand of the 5/4 & 6/4 to be shipped Aug. & Sept.

"Yours truly,
"Lapwai Lumber Co."

Plaintiff's answer reads:

Plaintiff's Exhibit "B."

"March 22d, 1917.

"Lapwai Lumber Co., Enterprise, Oregon.

"Gentlemen:

"Your favor of March 21st at hand regarding shop. We would be willing to take the shop lumber at the prices you quote, although you are above the market on No. 2. However we would take our chances on the No. 2. Now you let us know just how many thousand feet of each thickness 5/4, 6/4 and 8/4 you will let us have at the prices you name, and we will send you a blanket order for such amounts. In accepting such an order, it would have to be definitely understood that you would furnish the full amounts of each thickness, because we will make contracts with our customers to furnish exactly those amounts, and we will have to depend upon you furnishing the stock you agreed to furnish.

"Just at this time there is an extreme scarcity of shop lumber, especially No. 2, but we are inclined to think that as the mills come on the market with the new cut, prices will more likely decline, and we think that you are making a good trade by selling outright at the prices you are now making. However we want to keep in touch with you and get started by making this deal on the shop. A little later on, if you are willing, we would consider some kind of a proposition of a million feet of yard stock, common and finish. * *

"Yours very truly,
"C. R. Shaw Wholesale Co."

The next letter reads thus:

Plaintiff's Exhibit "C."

"Enterprise, Oregon, April 3, 1917.

"C. R. Shaw Wholesale Co., Boise, Idaho.

"Gentlemen:

"Your letter of the 22nd received. I would be willing to let you have about 250 thousand 8/4 #3 and

better shop at the prices I quoted you, but in case they should change the freight rates, different arrangements would have to be made at such time. This is not all the shop I will have, but is all I want to contract at the present time.

"Yours truly,<br>"LAPWAI LUMBER COMPANY, .<br>"By A. HACKBARTH."

Plaintiff then wrote defendant as follows:

Plaintiff's Exhibit "D."

"April 4th, 1917.

"Lapwai Lumber Co., Enterprise, Oregon.
"Gentlemen:

"Your favor of the 3rd at hand, and are enclosing order for the 250 M ft. of 8/4 shop. This we expect to ship all to one customer, and will send you shipping instructions in ample time.

"The writer is planning a trip to Eastern Oregon and will undoubtedly see you the latter part of next week.

"Yours truly,<br>"C. R. SHAW WHOLESALE CO."

Mr. J. G. Doerr, an officer of the plaintiff company testified in explanation of the order inclosed, thus: "This is a substantial copy of that order. The original sheet of that order, of course, has printed matter on, which the duplicate copy does not have,— does not carry. It shows who it is addressed to." A copy of the order follows:

Plaintiff's Exhibit "E."

"No. 5180.   April 4th, 7.

C. R. Shaw Wholesale Co.

     to follow

By Sept. 15th     52¢ rate          reg.

     250,000 8/4 #3 shop & better S2S

          # 3 @ 26.00

          # 2 @ 32.00

          # 1 @ 40.00

LAPWAI LUMBER Co.<br>Enterprise, Oregon.

"As per your letters March 21st and April 3rd."

In about a month and a half defendant wrote plaintiff this letter:

Plaintiff's Exhibit "F."

"Enterprise, Oregon, May 16, 1917.

"C. R. Shaw Wholesale Co., Boise, Idaho.

"Gentlemen:

"I think I will have to raise the price on the shop mentioned, which was about 250,000 feet on account of the war, as I have to raise my contractors about 1/3 and it is no more than right to do the same with you and if you have it contracted tell the other fellow the same as we were not figuring on war at that time.

"Yours truly,<br>
"Lapwai Lumber Co.,<br>
"By A. Hackbarth."

Defendant also wrote a letter which reads thus:

Plaintiff's Exhibit "G."

"Enterprise, Oregon, June 4, 1917.

"C. R. Shaw Wholesale Co., Boise Ida.

"Gentlemen:

"Your letter of the 29th received regarding the 2x12 at $14. I don't want any of it at that price as I can get considerable more money of course, I suppose you are figuring this on a shop deal but I want you to strictly understand that I am doing with you the same as I do with my contractors. I had a contract let for my logging, and also he was under bonds to furnish the logs, but I did not see that he could do it for the price he was getting after everything got as high as it is now, and looks as if it may go higher. I have raised my contractor 1/3 and all other expenses are nearly ½ so don't mention the shop any more as I will not furnish it at all unless it is down at that price whenever it is dry. Whenever it is dry I want the market price whether it is high or low and if it is too low I will not sell any and will not manufacture any more. I am willing for you to handle

my stock but do not want to sell for any such price as you offered me for the 2 inch.

"Yours truly,

"LAPWAI LUMBER CO.,

"By A. HACKBARTH."

(We underscore the material part.)

Plaintiff wrote defendant thus:

Plaintiff's Exhibit "H."

"October 13, 1917.

"Lapwai Lumber Co.,

"Enterprise, Oregon.

"Gentlemen:

"Please ship as soon as possible to ourselves at Oshkosh, Wisconsin, the 250 M ft. of 2″ shop on our order No. 5180 of April 4th. Please route shipments OWR&N OSL Up CM & StP., and advise about how fast our cars will go forward.

"Yours truly,

"C. R. SHAW WHOLESALE CO."

Plaintiff also wrote the following letter:

Plaintiff's Exhibit "I."

"December 6th, 1917.

"Lapwai Lumber Co.,

"Enterprise, Oregon.

"Gentlemen:

"Please let us know when you intend to ship the 2″ shop to Oshkosh on our order No. 5180 of April 4th, and oblige.

"Yours truly,

"C. R. SHAW WHOLESALE CO."

Defendant offered in evidence the following letter:

Defendant's Exhibit 1.

"Enterprise, Oregon, Aug. 2, 1917.

"C. R. Shaw Wholesale Co.,

"Boise, Ida.

"Gentlemen:

"Your letter of the 28th received regarding the C select. We do not want to sell this big amount to

one person as I think we will run out of clears and cannot fill our yard orders. Regarding the shop lumber it seems to me that you are figuring on pretty low prices, but as you are always mentioning the 250,000 which you are figuring you would be entitled to, but as conditions have changed as I told you before I don't think you would be entitled to it, and in this way I will let you have 200,000 8/4 1, 2 & 3 shop at the price which you mentioned July 30th, allowing you $1 commission, but I must know within the next week as I am figuring on going east, and if you cannot handle it perhaps I can dispose of it on my trip.

"Yours truly,
"Lapwai Lumber Co.,
· "By A. Hackbarth."

Plaintiff's counsel objected to this letter, as not pertaining to the transaction contained in the letters forming the contract, which objection was sustained and exceptions duly saved by counsel for defendant. Plaintiff further introduced testimony tending to show that about September 15, 1917, the prices of lumber were about $8 per thousand higher than they were in April when the contract was made; and that the letters "reg." on the heading of the order, Exhibit "E," are an abbreviation of the word "regular" and signify that the lumber would be paid for sixty days after delivery. Mr. J. H. Mimnaugh, a witness for plaintiff, testified to the effect that the market price of shop lumber 8/4 on July 27, 1917, was No. 3, $30; No. 2, $38; No. 1, $48; and that the prices advanced right along until the latter part of September, when it was at least a dollar per thousand more than in July.

At the close of plaintiff's case defendant moved the court for a nonsuit, for the reason that plaintiff had not proved a contract for the sale and delivery of the

lumber in question. The trial court found for the plaintiff, among other things finding that at the time for the delivery of the lumber as agreed upon it was worth on the market $5 per thousand more than the contract price, and rendered judgment in favor of plaintiff in the sum of $1,250.  Affirmed.

For appellant there was a brief and an oral argument by *Mr. Thos. M. Dill.*

For respondent there was a brief and an oral argument by *Mr. J. A. Burleigh.*

Bean, J.—1. The first contention of defendant is that the complaint does not state facts sufficient to constitute a cause of action; that there is no allegation in the complaint of any performance by plaintiff, and no consideration for the agreement alleged. Defendant cites *Davis Lumber Co.* v. *Coats Lumber Co.,* 85 Or. 542 (167 Pac. 507), and other like cases in support of the proposition that "before the plaintiff can put the defendant in default and claim damages for the breach of a contract, he must allege full performance or readiness and ability to perform on his part." This general rule is not questioned.

2. Under our statute, in an action at law tried by the court without the intervention of a jury, the findings of the court have the force and effect of a verdict of a jury. Therefore the question in regard to the complaint is, whether or not it is sufficient after verdict. The rule in this state is, that where a defendant answers after his demurrer to the complaint has been overruled, the complaint is to be construed most strictly in favor of the pleader. It will be sustained where it contains a defective statement of a cause of action, but not where it fails

to state a cause of action: *Olds* v. *Cary,* 13 Or. 362 (10 Pac. 789); *Oregon & C. R. R. Co.* v. *Jackson Co.,* 38 Or. 589, 597 (64 Pac. 307, 65 Pac. 369); *West* v. *Eley,* 39 Or. 461 (65 Pac. 798); *Shultz* v. *Shively,* 72 Or. 450, 453 (143 Pac. 1115). Therefore a different question arises in the present case, than where the sufficiency of a complaint is determined upon a demurrer.

As to the first criticism of the complaint, it will be noticed that defendant would not recognize the contract, and absolutely refused to ship the lumber before the time for performance of the agreement arrived. The rule in England is well settled that

"the positive and absolute refusal by one party to carry out the contract is in itself an immediate complete breach of it on his part, and gives immediate right of action." 1 Beach on Mod. Law of Contracts, § 409.

The only extent to which the doctrine is carried in the State of New York is, that a renunciation of a contract before the time for performance arrives will dispense with the performance of conditions precedent or concurrent, or the offer to perform. Massachusetts courts adopt the doctrine that a renunciation may give cause for treating the contract as rescinded, and excuse the other party from making ready for performance on his part, or relieve him from the necessity of offering to perform in order to enforce his rights. Illinois follows the Massachusetts rule, but holds the promisee need not wait until the day of performance before making new arrangements. It seems the federal courts and those of Iowa, West Virginia and Michigan, go to the full extent of the English cases, and allow an action to be brought at

once upon renunciation: 1 Beach on Mod. Law of Contracts, §§ 409-412.

3. It is well settled in this state that in the case of an executory contract, for the sale of property, where the seller, before the date for performance, repudiates the contract and refuses to deliver the goods, or to be bound by the contract, and had not signified a change of mind in regard thereto, it is not incumbent upon the buyer in an action for a breach of the contract to tender a delivery of the goods on the date specified in the contract. The law does not require the doing of a vain or useless act. Therefore, it was not necessary for plaintiff to plead performance of the contract or readiness to perform, after defendant by his letters of May 16 and June 4, 1917, had repudiated the contract and refused to ship the lumber as agreed: *Guillaume* v. *K. S. D. Land Co.,* 48 Or. 400 (86 Pac. 883, 88 Pac. 586); *Catlin* v. *Jones,* 48 Or. 158 (85 Pac. 515); *West* v. *Washington Ry. Co.,* 49 Or. 436 (90 Pac. 666); *Merrill* v. *Hexter,* 52 Or. 138 (94 Pac. 972, 96 Pac. 865).

While the complaint abounds in glittering generalities, a careful study of the averments as to the contract made by the parties discloses that defendant agreed with plaintiff to sell plaintiff 250,000 feet of lumber of the kind described. The parties also agreed upon the price to be paid therefor by plaintiff. It was stipulated by them that delivery of the lumber should be made by September 15, 1917. It may be that the cause of action is defectively stated. We think that a cause of action is set forth in the complaint, and that the pleading is good after verdict. The contract as alleged was mutual: See *Ward* v. *McKinley,* 97 Or. 45 (191 Pac. 322).

The motion for a nonsuit challenges the sufficiency of the contract of sale, as shown by the letters introduced in evidence. The prevailing rule is, as to sales or contracts to sell by letter, that if a definite proposition is made and accepted by letter, the acceptance being within a reasonable time and before knowledge of any retraction, the contract is closed by mailing the acceptance duly addressed: Benjamin on Sales, American Note, p. 72.

The defendant, by his letter of April 31, 1917, offered to sell the lumber to plaintiff as specified definitely in his former letter of March 21, 1917. Plaintiff accepted the offer, and forwarded an order for the 250,000 feet of lumber on April 4, 1917. It appears from the entire correspondence that there was a *bona fide* intent on both sides to come to a definite agreement for the sale of the lumber. The minds of the parties met, as the evidence tended to show. The contract was binding upon, and could have been enforced by, either party. The subsequent letter of defendant, attempting to open new negotiations, not acceded to by plaintiff cannot affect the contract, and the offer of such letter in evidence was properly refused by the trial court: *Williams* v. *Burdick*, 63 Or. 41 (125 Pac. 844, 126 Pac. 603); 13 C. J., p. 298, § 114.

It is claimed by defendant that the agreement as shown by the letters in evidence was modified by a subsequent oral arrangement between the contracting parties. There was a direct conflict in the testimony upon this point. The trial court found plaintiff's version of the matter was correct. This question is set at rest by the substitute for a verdict. We have no duty to deal with the weight of the evidence.

Some claim is made by defendant that the agreement was not definite as to the quantity of each grade, or number, of lumber. The defendant was manufacturing lumber, and under the contract as finally agreed upon any of the grades of lumber mentioned as it came from the log would fill the requirement. The testimony on the part of plaintiff tended to show that the price of each grade advanced five dollars per thousand during the period between the time of the agreement and the date for delivery. The trial court allowed only the amount the price had increased. Hence the claim does not embrace a material matter. The testimony was sufficient to pass the case to a jury, and the motion for a nonsuit was correctly overruled.

We find no error in the record. The judgment of the trial court is affirmed.                                AFFIRMED.

BENSON, J., not sitting.

---

Reversed November 22, 1921.

ON REHEARING.

(201 Pac. 1066.)

On rehearing.                                REVERSED.

In Banc.

RAND, Judge.—The main and, as we view it, the only question necessary for determination at this time is whether the written communications passing between the parties and which are copied in full in the original opinion constitute a valid offer and acceptance resulting in a binding contract. This question

must be determined solely from the language which the parties used in their communications to each other concerning the proposed purchase and sale of the lumber. This is particularly so because it is admitted that all of these communications were forwarded and received in due course of mail, thereby eliminating all questions except the legal effect flowing from the communications themselves.

Before attempting to analyze these communications the legal principles controlling the determination of this question will be considered.

4. It may be stated as a general rule requiring no citation of authority for its support that an offer containing a promise for a consideration to do an act, which a person has a lawful right to do, made by one person to another followed by an unqualified and unequivocal acceptance by the person to whom it is made of the offer as made creates a contract between the person making the offer and the person accepting it.

5. The offer, however, must be one which is intended of itself to create legal relations on acceptance, and must be capable of creating a definite obligation. It must not be a communication of information as to certain facts which may interest the party to whom it is communicated, or an offer intended merely to open negotiations which may ultimately result in a contract or intended to call forth an offer in legal form from the party to whom it is addressed: 1 Page on Contracts (2 ed.), § 84; 1 Williston on Contracts, § 37.

6. The acceptance must be positive, unconditional, unequivocal and unambiguous and must not change, add to or qualify the terms of the offer.

"In order to make a bargain it is necessary that the acceptor shall give in return for the offerer's promise exactly the consideration which the offerer requests. If an act is requested, that very act and no other must be given. If a promise is requested that promise must be made absolutely and unqualifiedly. This does not mean necessarily that the precise words of the requested promise must be repeated, but by a positive and unqualified assent to the proposal the acceptor must in effect agree to make precisely the promise requested; and if any provision is added to which the offerer did not assent, the consequence is not merely that this provision is not binding and that no contract is formed; but that the offer is rejected."

"The new condition is as fatal when its inconsistency with the offer appears by implication only as when it is explicitly stated. Thus when an offer is made by mail to sell stock, a reply in terms accepting the offer, and adding 'ship with draft attached' adds a new condition since by implication the place of delivery under the offer was the seller's residence, and the reply transfers it to the buyer's." 1 Williston on Contracts, sec. 73.

The same principle is stated in 1 Page on Contracts (2 ed.), Section 168, as follows:

"The acceptance of an offer for a promise must, furthermore, correspond to the offer at every point, leaving nothing open for future negotiations. An attempted acceptance which leaves open * * the time of delivery, or of payment, or an acceptance as to the price only, is without validity."

7. Where the offeree imposes an additional condition to those contained in the offer or makes a counter-offer or conditional acceptance which amounts to a counter-offer, or makes an attempted acceptance which seeks to modify one or more of the terms of the offer, this operates as a rejection of the original

offer. Before the counter-offer can become a contract it must be accepted by the party who made the original offer. The reason for the rule as stated by Mr. Williston is,

"the counter-offer is construed as being in effect a statement by the offeree not only that he will enter into the transaction on the terms stated in his counter-offer, but also by implication that he will not assent to the terms of the original offer." 1 Williston on Contracts, § 51.

See also 1 Page on Contracts, § 169; and 6 R. C. L., § 31, p. 608.

8. The only condition to the offer which can be added in the acceptance is one which does not qualify the offer in legal effect, or as stated in 1 Williston on Contracts, Section 78:

"Sometimes an acceptor from abundance of caution inserts a condition in his acceptance which merely expresses what would be implied in fact or in law from the offer. As such a condition does not interfere with the expression of assent to all the terms of the offer, a binding contract is formed. Thus an offer to sell land may be accepted subject to the condition that the title is good. For unless the offer expressly specify that the offeree must take his chance as to the validity of the title, the meaning of the offer is that a good title will be conveyed."

9. As all that went to make up the alleged contract is conceded to be in writing, we must look to the writings alone to determine whether a contract resulted therefrom. The language used determines whether the minds of the parties met or not: 1 Page on Contracts, § 73. Or, as stated by this court in *Williams* v. *Burdick,* 63 Or. 41, 50 (125 Pac. 844, 126 Pac. 603),

"the apparent mutual assent of the parties, which is essential to the formation of a valid agreement,

is to be gathered from the language that they have employed.''

As all of the correspondence may be found in the original opinion, we will refer only to such part as is deemed material to this inquiry, having in mind the principles of law above referred to.

On March 21, 1917, appellant wrote respondent stating: ''Regarding the shop lumber I would be willing to contract providing I got the price I am holding it for this on a 52¢ rate.'' Then following the dimensions and prices quoted the letter closes in these words: ''This is only a fair price, and will stay with these prices until I see that conditions changes and I prefer selling 8/4 as I have contracted several hundred thousand of the 5/4 & 6/4 to be shipped Aug. & Sept.'' As the words ''to be shipped Aug. & Sept.'' evidently refer to lumber contracted to parties other than respondent they will not be further considered. On March 22d respondent wrote to appellant acknowledging receipt of appellant's letter of March 21st, and stated:

''We would be willing to take the shop lumber at the prices you quote, * * . Now you let us know how many thousand feet of each thickness 5/4, 6/4 and 8/4 you will let us have at the prices you name, and we will send you a blanket order for such amounts.''

On April 3d appellant wrote respondent as follows:

''Your letter of the 22d received. I would be willing to let you have about 250 thousand 8/4 #3 and better shop at the prices I quoted you. * * This is not all the shop I will have, but is all I want to contract at the present time.''

For the purposes of discussion we shall assume without deciding that the language used in this letter

102 Or.—7

contained a definite offer, and was intended by appellant to create a contract when accepted, and that it was not intended merely to indicate a willingness to negotiate, and that if it had been accepted according to the terms of the offer it would have resulted in a binding and enforceable contract.

In respondent's letter of March 22d the respondent had stated to the appellant:

"Now you let us know how many thousand feet of each thickness, * * you will let us have at the prices you name and we will send you a blanket order for such amounts."

Evidently it was intended by both parties that the mailing of the so-called blanket order was to constitute the method by which the acceptance should be made of the offer for the sale of such quantity of lumber as the appellant should communicate to respondent he would sell. The letter of April 3d stated this quantity to be 250 M. ft. On April 4th, respondent replied as follows: "Your favor of the 3d at hand and are enclosing order for the 250 M. ft. of 8/4 shop." The order so inclosed is as follows:

"No. 5180.                            April 4th  7.
C. R. Shaw Wholesale Co.
   to follow
By Sept. 15th   52¢ rate reg.
      250,000 8/4 #3 shop & better S2S
         #3 at 26.00
         #2 at 32.00
         #1 at 40.00
                              LAPWAI LUMBER Co.
                              Enterprise, Oregon."

10. An examination of this so-called blanket order discloses that it contains terms and conditions not included in or made a part of the offer. The letters "reg." found in the order are explained as an abbre-

viation of the word "regular," and as used are said to mean that the lumber was sold on sixty-days' time. The offer as made by appellant contains no such provisions. It merely offered to sell the lumber at a fixed price and specifies no time of payment. "Unless otherwise agreed, delivery of the goods and payment of the price are concurrent conditions": Section 8205, Or. L.

11. The blanket order also contains the words "to follow by September 15th." The testimony shows that these words refer to the date on or before which delivery was to be made. This provision in the order imposes another condition not contained in the offer.

12. Where the time of performance is not specified, unless surrounding circumstances show a contrary intention, the courts will construe the promise as intending performance within a reasonable time, and "if the goods at the time of the bargain are not in a deliverable state a reasonable time for delivery would be a very short time": 1 Williston on Contracts, § 38. If, as in this case the lumber before delivery had to be manufactured, dried and prepared for shipment, what would constitute a reasonable time would depend on many circumstances regarding which no testimony was offered. There is nothing in any writing tending to show that this date was assented to by appellant. Hence, the fixing of the date when the delivery should be made, being unauthorized and arbitrary, and as it was not assented to by appellant, was not an acceptance but a rejection of appellant's previous offer, and was a new offer which appellant could accept or reject as he saw fit.

13. The insertion of these new and additional conditions in the attempted acceptance constituted a counter-offer which in legal effect was a rejection of

the offer of appellant, and unless appellant subsequently accepted this counter-offer no contract was created. There is nothing in the correspondence showing an acceptance by appellant of these conditions. Subsequently, and on May 16th, appellant wrote to respondent stating:

"I think I will have to raise the price on the shop we mentioned, which is about 250,000 ft. * * If you have it contracted tell the other fellow the same as we were not figuring on war at that time."

This might indicate that the appellant at that time believed that a contract did exist between himself and respondent as to the sale of the lumber. The language used is consistent with such belief, or it may be explained upon the theory that the appellant believed that the respondent might have contracted the lumber relying upon its ability to subsequently contract with appellant for its purchase. Regardless, however, of what appellant may have believed, the question of whether a contract did exist between the parties, is not dependent upon the belief of one or both thereof but is dependent as a matter of law upon the language used by them in their communications with each other.

14. Under certain circumstances it has been held that silence is an assent to a proposition, but the rule is that to constitute acceptance of an offer to make a bilateral contract "there must be an expression of the intention, by word, sign, or writing communicated or delivered to the person making the offer, or his agent": 6 R. C. L., § 29, p. 606. And "there can be no contract of sale until all the terms are fully agreed upon": 25 Cyc. 55.

Therefore, the failure of appellant to reply to the communication of April 4th cannot be held to be an

assent to the new conditions imposed by respondent in its pretended acceptance.

It is claimed that these provisions which were inserted in the attempted acceptance conformed to the general custom and usage pertaining to the business of selling lumber and that they would be implied as a part of the offer.

"To be regarded as a part of the contract the usage or custom must not only be shown to exist, but it must have both of the following elements: (1) It must be actually or constructively known; and (2) it must be consistent with the contract." 4 Page on Contracts (2 ed.), § 2057.

"In the absence of a real agreement between the parties, custom cannot impose contractual liability; although if there is a real agreement, many terms for which the parties have made no specific provision may be supplied by custom." 1 Page on Contracts, § 72.

The rule invoked is a rule of construction and is not a rule governing the formation of contracts, and will not be applied unless the existence of a contract has first been established. The construction of a contract implies its existence and that the contract is valid and enforceable, otherwise there is nothing to construe: 4 Page on Contracts, § 2020.

15. Custom to be relied upon must be pleaded: *Oregon Fisheries Co.* v. *Elmore Packing Co.*, 69 Or. 340, 343· (138 Pac. 862), and *Simms* v. *Sullivan*, 100 Or. 487 (198 Pac. 240, 242). There is no allegation of custom or usage in this case.

16. Evidence of custom can be given only for the purpose of aiding in the interpretation of an existing contract. It is never admissible for the purpose of proving the agreement itself. Unless there is proof of a contract, evidence of a custom or usage is inadmissible: *Oregon Fisheries Co.* v. *Elmore Packing*

*Co.,* 69 Or. 340, 343 (138 Pac. 862), and *Barnard &*
*Bunker* v. *Houser,* 68 Or. 240, 243 (137 Pac. 227).

For these reasons, we are constrained to hold that
the attempted acceptance imposed new and additional
terms not to be found in the original offer; that this
operated as a rejection of the offer, and the making
of a new offer on the part of the respondent, which
offer was never accepted by the appellant; and that
no contractual relations between the parties came
into existence.   Therefore, the judgment of the lower
court must be reversed.                          REVERSED.