Argued October 10, 1961, reversed May 2, 1962

# WAGNER *v.* RAINIER MANUFACTURING CO.

### 371 P. 2d 274

*Thomas H. Tongue,* Portland, argued the cause for appellant. With him on the briefs were Parker & Duffy.

*Malcolm F. Marsh,* Salem, argued the cause for respondent. On the brief were Goodenough, Clark & Marsh.

Before McAllister, Chief Justice, and Rossman, Perry, Goodwin and Lusk, Justices.

LUSK, J.

This is an appeal from a judgment for the plaintiff after a jury trial in an action to recover damages for breach of contract.

The principal question, and the only one that needs to be decided, arises out of the court's denial of the defendant's motion for a directed verdict based upon the ground that the contract sued upon was never entered into by the parties.

The plaintiff, H. J. Wagner, is a contract logger. The defendant, Rainier Manufacturing Co., is an Oregon corporation engaged in the timber business.

The complaint alleges, in substance, that on or about November 5, 1959, the plaintiff called to the attention of the defendant a sale of an estimated 6,629,000 board feet of timber in Tillamook County, Oregon, which was about to be conducted by the Bureau of Land Management, Department of Interior,

United States Government; that on or about November 6, 1959, the plaintiff made an offer to the defendant to build the necessary roads and to cut, yard, load, and haul all of said timber for $27 per thousand board feet of logs, net truck scale; that defendant accepted said offer contingent upon it being the successful bidder at the sale; that the defendant bid in the timber on the basis of the logging figure in plaintiff's offer; that on or about December 3, 1959, the defendant confirmed the agreement between the parties and informed the plaintiff that it would have a written contract prepared setting forth the oral agreement theretofore made; that the defendant, on or about January 6, 1960, repudiated the agreement and advised the plaintiff that it had made other arrangements for logging the timber. There are appropriate allegations of damages.

The defendant, by its answer, denied all the allegations of the complaint respecting the making of the contract and damages.

The evidence discloses the following facts: Early in November, 1959, the plaintiff met Alexander Hill, a log scaler in the employ of the defendant and told him about the sale referred to in the complaint; through Hill, Wagner met William E. Leahy, manager of the defendant's timber department, and Hill, with the approval of Leahy, went with Wagner to look over the timber in question. Wagner was seeking the contract for logging the timber and told Hill he would do it for $27 per thousand board feet. Hill informed Leahy of this. The sale was held on November 17 and the defendant bought the timber, and a little later, possibly on the day of the sale, Hill told Wagner that "he was sure I had the job of logging." Hill gave Wagner the same assurance several times thereafter. Wagner conceded in his testimony that Hill had previously advised

him that his dealings would have to be with Leahy and there is no evidence that Hill had authority to contract on behalf of the defendant.

In the latter part of November Wagner submitted to the defendant, at Leahy's request, the following proposal in writing, which is reproduced exactly as written:

"Rainier Manufacturing Co.
Rainier Oregon

"H. J. Wagner  Logging
"Summit,s Bid to Log Timber On tract W.1/2 S.W.1/4 Section 18 T 3 S.,R.7.W And W.1/2 N.W. 1/4 Section 18,T,3 S., R.W.E.1/2 S.E 1/4 Section 13,T. 3.S.,R. 8W.,35 Miles Southeast Of Tillamook Oregon.For the Sum Of$27.00 Net Truck Scale In the river at Salem Oregon. I own this Equipment Listed below And I am FInancial able to get whatI need to do the Job.
"2.D.7 Cats in good shape
1 B.U.30 Loadind Donkey
1 T.D.9.Cat to load Rock
2 GMC. Log Trucks
1 Weel Arch
5 Power Saws
1 B.U.20 Loading Donkey 3 Sets Tongs and plenty riggen to go with all my Equipment. Insurance in respect to bodily Injury.$100.000.00 And each Person and $300.000.00 for each occurrence.and in respect to property damage of $300.000.00 fo each occurrence. Bank Referance The United Ststes National Bank Mill City Oregon Banker Bob. Hill Logging Referance Oregon Pulp And Paper Company.R.E.Schaefer Or (Dick) Salem Oregon [Ditto marks under "Logging Referance"] PLYWood Products Timber Co. Bob Cubic Albany Oregon. I am sending with this a copy of a Contract Witch I have Completed.
Road---$2.25
Cutting.$2.50

Hauling.$12.00
Yarding & Loading $10.25
Total------------$27.00 Net Truck Scale

" H. J. WAGNER "
- - - - - - - - - - - - - -

Accompanying this proposal was a copy of a logging contract between Wagner and a corporation called Plywood Products Timber Company under which, apparently, Wagner had previously worked.

Early in December, 1959, there was a meeting at the office of the defendant in Rainier, Oregon, attended by Wagner, Leahy, Hill, and others, at which there was a general discussion of the terms of a contract that might be entered into between the plaintiff and the defendant. No agreement was reached at this time; on the contrary, Wagner testified that Leahy told him "he would let me know what the outcome was."

In the latter part of November or the first part of December (the exact date is not disclosed) Wagner asked for a writing from the defendant giving him "assurance on the job."

After the meeting in Rainier, under date of December 3, 1959, Leahy sent the following letter to the plaintiff, written on the letterhead of the defendant:

"Mr. H. J. Wagner
Box 124
Mehama, Oregon

"Dear Sir:
"In regard to logging the timber on Section 18-T3S-R7W and Section 13-T3S-R8W, which we have discussed with you, we wish to state that we consider your logging bid favorable. We will have our attorney draw up a contract covering points gen-

erally outlined in your Plywood Products Timber Company contract.

"We shall need a performance bond, and no doubt a financial statement. However, we can discuss these points later.

"This memo will give you an assurance that we will work out this matter with you subject to such points as our attorney brings up.

> "Yours very truly
> "RAINIER MANUFACTURING CO.
> /s/ "Wm E Leahy
> "W. E. Leahy, Manager
> "Timber Department

"WEL/sp
"CC: Mr. Alex Hill
      Rainier, Oregon"

There were no further communications between the parties until Wagner, having been informed that the contract had been given to another concern, took the matter up with Leahy, who told him that "it was their privilege to send a man in there to see whether I had bid the sale too high or too cheap" and that "they should be through in a few days and he would let me know what the outcome was." Under date of January 6, 1960, the defendant wrote to the plaintiff:

> "Portland 1 Oregon
> January 6- 1960

"Mr. H J Wagner
    Box 124
Mehama, Oregon

"Dear Sir

"I regret to advise you that we have arranged with other parties to contract the logging of the timber we purchased near Beaver Oregon in Tillamook Co. We wish to state that your bid was favor-

able and that our decision was enfluenced [sic] by our having had many years of satisfactory dealings with the parties engaged.

"We are returning the form contract you presented for our consideration.

"Yours Very truly
"Wm E Leahy —     Rainier Mfg Co"

The filing of the complaint in this action followed the receipt of the foregoing letter by Wagner.

The alleged contract, if it ever came into existence, must be found in the written proposal of the plaintiff and the defendant's letter of December 3, 1959 (Exhibit D), for it is undisputed in the record that prior to the passing of these communications, the minds of the parties had never met. The last oral negotiations at the office of the defendant in Rainier ended not in an agreement, but in Leahy's promise to Wagner to let him know the outcome.

■ The trial judge submitted the question of contract *vel non* to the jury. This, we think, was error, for the rule in this state is that where the evidence of the alleged contract is all contained in letters or other writings, it is the province of the court to construe them and see if they constitute a contract. *Northwestern Agencies v. Flynn,* 138 Or 101, 106, 5 P2d 530; *Jones v. Marshall-Wells Co.,* 104 Or 388, 396, 208 P 768; *Shaw Wholesale Co. v. Hackbarth,* 102 Or 80, 93-94, 198 P 908, 201 P 1066; *Dodge v. Root,* 83 Or 21, 24, 162 P 254. It is so held generally elsewhere. See cases from numerous jurisdictions cited in 100 ALR 971-972.

■ The written proposal of the plaintiff was an offer to enter into a bilateral contract with the defendant to log its timber, and the question is whether the defendant's letter of December 3, 1959, constituted an

acceptance of the offer. Before it can be said that a bargain has been made, the acceptance must be "positive, unconditional, unequivocal and unambiguous and must not change, add to or qualify the terms of the offer." *Shaw Wholesale Co. v. Hackbarth,* supra, 102 Or at 94. See, also, *Killam v. Tenney,* 73 Adv Sh 699, 713, 229 Or 134, 366 P2d 739, 746; *Hubbs v. Warehouse Serv. Corp.,* 149 Or 559, 569, 42 P2d 180; *Strong et al v. Moore et al,* 105 Or 12, 22, 207 P 179, 23 ALR 1217, and cases there cited; 1 Williston, Contracts (3d ed) § 72.

With respect to the requirement that the acceptance must be unequivocal, it is said in the comment to section 58, Restatement, 1 Contracts 65:

> "An offeror is entitled to know in clear terms whether the offeree accepts his proposal. It is not enough that the words of a reply justify a probable inference of assent."

In *Minar v. Skoog,* 235 Minn 262, 265, 50 NW2d 300, the court thus elaborated upon the subject:

> "Do we have a valid acceptance by the lessee of the terms of the option offer? In passing upon questions of offer and acceptance, as determinative of whether a contract has thereby been created, courts normally require a greater exactitude than when they are asked to salvage an existing contract. Henry Simons Lbr. Co. v. Simons, 232 Minn 187, 44 N. W. (2d) 726.
>
> " 'It is true that there is much room for interpretation once the parties are inside the framework of a contract, but it seems that there is less in the field of offer and acceptance. Greater precision of expression may be required, and less help from the court given, when the parties are merely at the threshold of a contract. If a court should undertake to resolve ambiguities in the negotiations between parties, disregard clerical errors, and re-

arrange words, leaving out some and putting in others, it is hard to see where the line of demarcation could be drawn and the general effect would inevitably be a condition of chaos and uncertainty.' United States v. Braunstein (D. C.) 75 F. Supp. 137, 139, appeal dismissed (2 Cir.) 168 F (2d) 749." 232 Minn at 265.

■ As is evidenced by the act of the plaintiff in submitting to the defendant with his proposal a copy of his contract with Plywood Products Timber Company, and by the language of Exhibit D, both parties contemplated that a contract in writing would be prepared and executed. Such a circumstance may or may not be decisive of the question whether a binding contract has been effected. If the intention of the parties was to make the reduction of the agreement to writing and the execution thereof a condition precedent to its completion, it will not be a contract until this is done, although all the terms of the contract may have been agreed upon. If, however, the written contract is intended merely to serve the purpose of a memorial of the terms of a completed contract, failure to execute the written contract will not impair the binding effect of an agreement already made. *Howland v. Iron Fireman Mfg. Co.,* 188 Or 230, 292, 213 P2d 177, 215 P2d 380; *United States Life Ins. Co. v. Bernert,* 161 Or 44, 63, 87 P2d 774; *Williams v. Burdick,* 63 Or 41, 50, 125 P 844, 126 P 603. The rule is thus stated in *Rossdale v. Denny* [1921] 1 Ch. (Eng.) 57, 59:

"* * * If upon the true construction of the documents the reference to a formal contract amounts to an expression of a desire on the part of one or other of the parties, or both, that their already complete contract should be reduced into a more formal shape, then the fact that no such contract has been executed is no defence to the action, but the original and complete contract sur-

vives and may be enforced. If, on the other hand, the true construction of the documents is this, that either the offer or the acceptance was conditional only, then the non-execution of a formal contract affords a defence to the action upon the ground that the parties really did not intend to be bound until a formal document had in fact been executed."

As stated in *Rosenfield v. United States Trust Co.*, 290 Mass 210, 216, 195 NE 323, 122 ALR 1210:

"* * * Normally the fact that parties contemplate the execution of a final written agreement justifies a strong inference that the parties do not intend to be bound by earlier negotiations or agreements until the final terms are settled. * * * Said fact does not conclusively establish such intention. * * * If all the material terms which are to be incorporated into a future writing have been agreed upon, it may be inferred that the writing to be drafted and delivered is a mere memorial of the contract, which is already final by the earlier mutual assent of the parties to those terms. * * *"

Annotations on this subject may be found in 122 ALR 1217 and 165 ALR 756.

■ With these principles in mind, we turn to the writings. The proposal of the plaintiff, if it had been accepted, would have no doubt resulted in a contract, but the defendant's letter (Exhibit D) was not an acceptance. The language "we consider your logging bid favorable" is equivocal and, although possibly susceptible to the interpretation that it was intended to be an acceptance, does not necessarily bear that meaning. It is at best subject to conflicting inferences and not the less so when the letter is read as a whole. The letter continues: "We will have our attorney draw up a contract covering points generally outlined in your Plywood Products Timber Company contract."

The contract referred to is an elaborate document of nine typewritten pages, including fourteen numbered paragraphs. It was evidently intended by the plaintiff to serve as a model for a contract to be executed by the parties and this is the use which the defendant proposed to make of it. The contract to be drawn would, the defendant wrote, cover the points generally outlined in that document, though, so far as the letter goes, it might cover other points as well. Next the letter says "We shall need a performance bond, and no doubt a financial statement. However, we can discuss these points later." The specific reference to a performance bond may have been made because the contract with the Plywood Company provided, instead, for a "performance deposit", that is, the retention by the company of the sum of one dollar per thousand board feet from each payment to be made to the logger under the contract. Putting this to one side, the suggestion that a financial statement would be required and the final sentence of the letter leave little doubt about its proper construction. The final sentence is: "This memo will give you an assurance that we will work out this matter with you subject to such points as our attorney brings up." A financial statement would not be a term of the contract, but a condition precedent to entering into a contract. The statement, when furnished, might or might not be acceptable to the defendant. It might not even be required, as plaintiff's counsel suggest in their brief, but that is beside the mark, for we are engaged now in interpreting a writing for the purpose of determining whether it constitutes an unequivocal acceptance of an offer, and the inclusion of this stipulation indicates that there was no such acceptance, as does the final sentence of the letter giving assurance that "we will work out this

matter with you" and then proceeding to limit that assurance by the words "subject to such points as our attorney brings up." In *F. W. Berk & Co. v. Derecktor,* 301 NY 110, 92 NE2d 914, the language claimed to be the acceptance of an offer was as follows: "We confirm that the above is our understanding of this agreement, and accept this order subject to our arranging all of the above phases of this transaction." The court held that the words "subject to" were the equivalent of "conditional upon or depending on" and, therefore, that the acceptance was not unconditional.

No language in Exhibit D can be pointed to as an unqualified acceptance of the plaintiff's offer. The nearest approach to it is found in the words "we consider your logging bid favorable." Much less ambiguous language has been held by the courts to be not a sufficiently clear indication of an assent to an offer as to create a contract. See 1 Williston, Contracts (3d ed) § 72 and illustrative cases there commented on.

The cases are legion and, as has been said of wills, no case has a brother. It would, therefore, be of small value to attempt to compare and distinguish decisions. We call attention, however, for illustrative purposes, to one of the cases referred to by Williston in the section of his work on contracts above cited, namely, *Martin v. Northwestern Fuel Co.,* 22 F 596 (C C, D Minn 1884). The opinion was by Circuit Judge Brewer, who later became Justice of the Supreme Court of the United States. The plaintiff declared upon a contract for the sale of coal. The defendant, in reply to a telegram offering the coal at a stated price, wired the plaintiff: "Telegram received. You can consider the coal sold. Will be in Cleveland and arrange particulars next week." Plainly, this was a stronger case for the

plaintiff than the case at bar, yet the court held that there was no contract. It was said in the opinion:

"* * * My brother NELSON suggested whether that was not of itself a qualified acceptance. It is not, 'I accept your offer,' but 'you may consider the coal sold.' It is not, perhaps, a natural expression when a definite acceptance of an offer is intended. It is more equivalent to this: 'There is so little to be settled, and I am so sure that all can be arranged, that you are safe in looking upon the sale as closed, and prepare to make your arrangements accordingly. You may consider—you may understand—that this contract is going to be consummated, and that I will come to Cleveland and we will fix it up.'

"So it seems to me that the telegram carrying to the proposed vendor, a statement from the proposed vendee that he will come to Cleveland, to his place of business, and arrange particulars, carries with it a fair implication that the particulars are to be arranged before the contract is finally consummated. * * *" 22 F at 599, 600.

We have examined the decisions cited in plaintiff's brief, but as they announce no departure from the governing principles above set forth, there is no occasion to discuss them specifically, with the exception of *Williams v. Burdick,* supra, the facts of which point up the difference between a qualified and an unqualified acceptance of an offer. The plaintiffs made an offer by telegram to buy dried prunes from the defendant at a stated price. The defendant replied by telegram "Accept" and followed this by the words "mailing contract hold thirties firm three three-eighths." The "thirties" referred to a better quality of dried prunes than the sort which the plaintiff offered to buy and the court said that it could not be determined from the message whether "mailing contract" used in the message applied to the "thirties"

or to the quality of prunes specified in the plaintiffs' offer; but it was held that, since there was an unqualified acceptance of the plaintiffs' offer and no positive conditions attached to the assent, the negotiations terminated with the message. The unqualified acceptance was manifested by the use of the word "Accept," the conclusiveness of which would not be affected even though the remainder of the message had referred unambiguously to a contract covering the plaintiffs' offer, so long as nothing was said in the message to indicate an intention to condition the acceptance on the execution of a written contract. The case is an apt illustration of an unequivocal acceptance of an offer, as contrasted with the language found in Exhibit D.

Somewhat similar is the recent case of *Killam v. Tenney,* supra, where an optionee orally informed the optionor that he was exercising an option and followed this with a letter, the purpose of which was stated to be "to repeat and confirm the verbal exercise of the option," etc. We held that the unconditional and unqualified character of this acceptance of the offer was not altered by the suggestion of the optionee that the parties agree on certain matters incident to the performance of the contract.

We are of the opinion that the proof fails to establish the making of the alleged contract. The court erred in denying the defendant's motion for a directed verdict and the judgment is reversed, with directions to enter a judgment for the defendant.

ROSSMAN, J., specially concurring.

The majority state, "the rule in this state is that where the evidence of the alleged contract is all contained in letters or other writings, it is the province of the court to construe them and see if they constitute

a contract." I concur in that statement, but do not believe that in the case at bar the alleged contract is "all contained in letters or other writings."

The letter of December 3, 1959, bearing the defendant's signature through William E. Leahy, manager of its timber department, states in part: "We consider your logging bid favorable." The quoted words were highly important to the plaintiff's case, yet Mr. Leahy, as a witness for the defendant, testified: "It was not a favorable bid." Evidently he sought to challenge the writing and undermine the plaintiff's case. On account of that fact as well as others it cannot be said that all of the evidence pertaining to the alleged contract consists of writings. Nevertheless, I believe that the plaintiff did not establish the purported agreement. The minds of the parties never met, and the plaintiff so recognized. Down to the very end the plaintiff was constantly endeavoring to ascertain from those who were acquainted with the defendant's officials the disposition it was likely to make of his bid. He recognized that no acceptance of it had been made. Those from whom he inquired would tell him, according to his testimony: "they would let me know." In other words, when effect is given to all of the evidence, written and parol, no contract is established. The plaintiff's bid was never accepted even though the defendant evidently sought to create in him false hopes while it was negotiating a contract with some one else.

For the above reasons I concur.