Argued and submitted May 7, affirmed May 19, 1980

# SUNLAND INVESTMENT, INC., et al,
## *Appellant,*
### *v.*
# BILL WOLFE RANCHES, INC.,
## *Respondent.*

### (No. E-8091, CA 14635)

610 P2d 1253

Alex M. Byler, Pendleton, argued the cause for appellant. With him on the briefs were Peter H. Wells and Corey, Byler & Rew, Pendleton.

John A. Records, La Grande, argued the cause for respondent. On the brief were Lorin M. Ricker,

William L. Reynolds, and Ricker & Ricker, P. C., Enterprise.

Before Schwab, Chief Judge, and Warden and Warren, Judges.

PER CURIAM.

## PER CURIAM.

The trial court's opinion succinctly and correctly disposes of this case. We adopt it as our own. It reads:

"Plaintiff, as purchaser, filed this suit seeking specific performance of an earnest money agreement for the sale of real property in Wallowa County. Defendant, as seller, takes the position in its pleadings and at the time of trial that the earnest money agreement is unenforceable.

"The court finds the essential facts in this case to be as follows. In 1977 the defendant decided to attempt to sell a portion of its ranch consisting of 1,124 acres. The defendant was in need of working capital. Furthermore, the defendant was in an unusually good tax position to absorb any gain resulting from the sale of the property. Defendant's tax year expired October 31, and it was essential that the sale be completed by that time.

"The property is located in a remote area of Wallowa County. The land has value for cattle grazing purposes, but its principal value comes from containing more than two million board feet of timber.

"The property was listed by the defendant with a real estate firm, who in turn contacted plaintiff. Without inspecting the property and based primarily on the representation as to the amount of merchantable timber on it, plaintiff executed the earnest money receipt to buy the property for $224,000. The earnest money agreement called for a down payment of $50,000, with the balance to be paid over a period of time pursuant to a land sale contract later to be executed between the parties. The earnest money agreement was conditional upon a timber cruise showing more than two million board feet of merchantable timber free of insect infestation. The earnest money agreement was executed by plaintiff on July 7, 1977. The transaction, by the terms of the agreement, was to be closed on or before October 1, 1977 'or as soon thereafter as financing documents can be prepared and marketable title delivered.'

"A timber cruise was completed in July 1977, and thereafter plaintiff decided to proceed with the purchase of the property. The preliminary title report

[147]

was issued on August 2, 1977, which revealed certain exceptions to the title that were unsatisfactory to plaintiff. Some of these exceptions were taken care of by defendant, and a revised title report was issued on August 23, 1977.

"Defendant then had his lawyer draw a land sale contract * * *, and this draft was presented to plaintiff in mid-September. The proposed contract was unsatisfactory to plaintiff in several respects. Purchaser disliked the clause in the contract about payment of deferred taxes; plaintiff asked for a different type of deed to be delivered than called for in the contract; plaintiff struck out the clause prohibiting commission of waste upon the property or impairment of seller's security in the premises; plaintiff asked to have struck the clause prohibiting the cutting and removing of timber without first obtaining defendant's written consent; and, plaintiff disagreed with the clause relating to default.

"The concern of the plaintiff was conveyed to the defendant by the real estate agent on October 3. The attorney for defendant was unavailable at that time. When he returned to his office, the attorney wrote a letter * * * dated October 11, 1977, in which he states that defendant is going to insist on some clauses as set forth in the original draft of the land sale contract, but that defendant is willing to negotiate on the removal of timber. There were then efforts made by the real estate agent to set up a meeting between the parties to the transaction, but for one reason or another the meeting never took place. Thereafter, on October 18, 1977, plaintiff wrote a letter to defendant * * *, wherein plaintiff insisted that a real estate contract be drawn 'according to the terms of the earnest money agreement.' Plaintiff meant that the contract should be redrafted in accordance with their previously indicated wishes, including removal of all restrictions on committing waste, impairment of security, and removal of timber.

"On October 24, 1977, defendant's attorney again advised plaintiff that they wanted a contract providing for the commitment of no waste and for the orderly removal of timber. The letter * * * further

provided that 'they shall have seven days after receipt of this letter to sign the contract.' The letter was received by plaintiff on October 28, 1977. On November 1, 1977, plaintiff talked to its lawyer in Oregon. On November 3, 1977, the lawyers for the parties met, and for the first time plaintiff agreed to all provisions in the original land sale contract drawn by defendant's lawyer, except for the clause on timber removal. With respect to the removal of timber, plaintiff proposed that the contract provide for the removal of the timber with a portion of the proceeds being applied on the purchase price. Counsel for defendant did not agree to the suggested changes in the contract providing for the removal of timber, nor did he waive the seven-day time limit indicated in his letter of October 24, 1977. When the revised contract prepared by plaintiff's attorney was received by the defendant, he refused to sign it because he was then in a new tax year and the provision for removal of timber was not satisfactory to him. This lawsuit for specific performance eventually followed.

"An earnest money agreement may be a completed agreement between the parties or it may only be a 'bargain in a rough form' to be followed by a final contract. *Phillips v. Johnson,* 266 Or 544 [514 P2d 1337] (1973).

"In *Wagner v. Rainier Mfg. Co.,* 230 Or 531 [371 P2d 274] (1962), the Supreme Court stated:

" ' "* * * Normally the fact that parties contemplate the execution of a final written agreement justifies a strong inference that the parties do not intend to be bound by earlier negotiations or agreements until the final terms are settled. * * * Said fact does not conclusively establish such intention. * * * If all the material terms which are to be incorporated into a future writing have been agreed upon, it may be inferred that the writing to be drafted and delivered is a mere memorial of the contract, which is already final by the earlier mutual assent of the parties to those terms. * * *" *(Quoting Rosenfield v. United States Trust Co.,* 290 Mass 210, 216, 195 NE 323, 122 ALR 1210 (1935).)' 230 Or at 540.

[149]

In *Phillips v. Johnson,* supra, the Supreme Court noted:

> " 'This court, in a long line of cases, has adhered to the rule that before there can be a valid contract there must be a meeting of the minds as to all of its terms; that nothing can be left for future negotiation, and that if any portion of the contract is not agreed upon, or if no method is agreed upon by which such a term or provision can be settled, there is no contract. (Citations omitted).' 266 Or at 555.

"In this case it is clear that the parties did not intend the earnest money agreement to constitute the completed agreement. The parties specifically provided for the preparation and execution of a land sale contract.

"This court concludes that there was no meeting of the minds as to the essential terms of the contract. Specifically, there was no agreement as to when, how much, or under what conditions timber could be removed from the property. Timber was a principal asset and a primary reason why plaintiff was trying to buy the land. There was also no agreement as to commission of waste by the purchaser, impairment of security, payment of deferred taxes, and method for foreclosure of the contract. These were obviously essential provisions of the contract.

"Plaintiff maintains that if there is no provision in a contract for the removal of timber, purchaser is entitled to remove at least a portion of it under the common law. Plaintiff relies on the case of *Thienes v. Francis,* 69 Or 165 [138 P 490] (1914). Assuming plaintiff's statement of the common law is correct, the *Thienes* case would still not permit a purchaser to remove timber to the extent that a seller's security is impaired. However, up to November 3, 1977, plaintiff insisted upon a contract provision permitting it to remove timber to the extent of impairing defendant's security in the property.

"As noted in *Higgins v. Bonnett,* 282 Or 725 [580 P2d 180] (1978):

> " 'The plaintiffs as buyers were not entitled to a contract which satisfied only their interest. The defendants as sellers were entitled to present a

[150]

contract which protected their interest in the property to be sold.' 282 Or at 729.

"As in the *Higgins* case, I have examined the alleged inconsistencies between the earnest money agreement and the final contract and conclude that the challenged items are provisions that would normally be included in a detailed land sale contract of this type. The only possible exception might be that with respect to timber, and in mid-October defendant indicated a willingness to negotiate on this item. Plaintiff, however, did not communicate any intent to budge from its position until after consulting a lawyer in Oregon in November 1977, which was too late.

"Even if it could be said that there was a contract, the earnest money agreement contemplated a closing on October 1, 1977. In an effort to negotiate the differences, defendant extended the deadline. However, defendant through his lawyer, specifically indicated on October 24, 1977 that plaintiff only had seven days after receipt of the letter to execute a contract. This seven-day time limitation was not extended by defendant's counsel in his negotiations with plaintiff's counsel, and plaintiff did not sign a proposed contract until well after the seven-day time period limitation. The result was that the proposed contract was presented in defendant's next fiscal year, which had adverse tax consequences. The proposed contract also provided for removal of timber in a manner unsatisfactory to seller. Defendant had a right to insist on purchaser's performance within the specified time period. *Usinger v. Campbell,* 280 Or 751 [572 P2d 1018] (1977). Thus, the court further concludes that had there been an agreement, it expired when no land sale contract was executed within the extended period of time allowed by defendant.

"Plaintiff has requested that, in the alternative, defendant be ordered to execute a deed upon plaintiff tendering the balance of the full contract price within a reasonable period of time. Plaintiff relies upon the case of *Phillips v. Johnson,* supra.

"The principle set forth in the *Phillips* case does not apply where the uncertainty is so great as to prevent the existence of a contract. This court, as

[151]

noted above, holds that there was so much uncertainty that there was no meeting of the minds and therefore no contract. Plaintiff is willing to pay the full contract price because in the interim the value of timber has increased substantially. However, if in the interim the value of timber had decreased and defendant was insisting on specific performance, defendant would not be able to prevail for the same reasons—the agreement was so uncertain as to prevent the existence of a contract. The evidence was simply overwhelming that the earnest money agreement was indefinite in many substantial respects, including, but not limited to, the removal of timber and the commission of waste. Over an extended period of time there was some effort to negotiate a final land sale contract. The negotiations were not successful as to the substantial terms and thus there simply was never any contract entered into by the parties.

"Plaintiff's complaint will be dismissed and the $5,000 earnest money will be returned to plaintiff. * * *."

Affirmed.