Argued and submitted November 19, 1980, reversed and
remanded with instructions May 4, reconsideration denied June 18,
petition for review denied July 21, 1981 (291 Or 368)

# COOK,
## *Appellant,*
*v.*
# DESLER et al
## *Respondents.*

## (No. CC 78-754, CA 17167)

627 P2d 885)

Thomas J. Moore, Hillsboro, argued the cause for appellant. With him on the briefs was Brink, Moore, Brink & Peterson, Hillsboro.

Thomas E. Sweeney, Cannon Beach, argued the cause for respondent. With him on the brief was Sweeney & Casterline, Cannon Beach.

Before Joseph, Presiding Judge, and Warden and Warren, Judges.

JOSEPH, P. J.

**JOSEPH, P.J.**

This is a suit for specific performance of an earnest money agreement for the sale of stock of a closely held corporation. Plaintiff (purchaser) appeals from a decree denying the requested relief. The trial court found that the earnest money agreement was a "binding agreement," but denied specific performance on the basis that conditions precedent to performance of the agreement by defendants had not been satisfied.[1] We review *de novo.*

Plaintiff and individual defendants (hereafter "defendants") were the stockholders and officers of defendant Holladay Place, Inc. (hereafter "the corporation"), which operates a clothing store in Seaside.[2] In April, 1978, they began negotiations for the purchase of the business by plaintiff. During the subsequent negotiations and discussions, the business was appraised. A purchase price was agreed on in August, 1978.

In early September defendants' attorney prepared a draft earnest money agreement, which included the following separate provisions:

"16. The closing of this sale is subject to Ed Luoma, C.P.A., providing his written opinion that it is feasible for Corporation to reasonably meet the increased financial commitments created by this Agreement.

"1 . The provision regarding the accountant's approval shall not be required if COOK pays the insurance premiums on the Corporate policies on his life. It is understood that insurance coverage is a material consideration

---

[1] The court made the following findings of facts:

"1. The Earnest Money Agreement of October 6, 1978 was a binding agreement and each of the parties were bound to comply with its provisions.

"2. The agreement was dependent on (a) a written opinion by Ed Luoma, C.P.A., that it was feasible or (b) plaintiff paying the life insurance policies on his life.

"3. Ed Luoma never gave such a written opinion.

"4. Plaintiff did not pay the life insurance policies on his life.

"5. Plaintiff has expressed a willingness to pay the insurance policies' premiums, however that was a condition precedent and no payments were made nor was a formal written tender made to do so."

[2] The corporation was also a named defendant.

in this transaction and that to the extent reasonably feasible in the accountant's opinion the CORPORATION shall pay said premiums."

(The first quoted provision was in the agreement itself, and the latter was in a set of additions.)

In September, 1978, plaintiff, Mr. Desler, the attorney for the corporation and Luoma met to discuss the proposed sale. At that meeting Luoma voiced his concern with the arrangement and suggested that the transaction be restructured so that plaintiff, rather than the corporation, would purchase the majority of defendants' stock. As a result of that meeting a revised earnest money agreement incorporating Luoma's proposed changes was prepared by the attorney for the corporation. On October 5, 1978, plaintiff and Mr. Desler met to discuss the details of the agreement. Mr. Desler called his attorney, who approved the terms; he also consulted with Luoma, who approved the transaction. On October 6, 1978, the parties signed that revised earnest money agreement and agreed to a tentative closing date of November 1, 1978.[3]

The signed version of the earnest money agreement contained the language quoted above and also provided in specific terms for the purchase of defendants' stock and the future management of the corporation. It included other provisions for: description of the subject matter (i.e., the shares of stock); the purchase price; the down payment; the interest rate and amount of monthly payments; the closing date; no prepayment penalty; the balance due to be evidenced by a promissory note guaranteed by a certain person; a pledge of the shares of stock; Mr. Desler to have no participation in management so long as plaintiff was not in default; the Deslers to resign as officers and directors upon closing; life insurance on Mr. Desler and plaintiff; plaintiff to become controlling stockholder on closing; a right of first refusal to purchase the real property; release of shares of stock from escrow; and refinancing as required to operate the business.

---

[3] The earnest money agreement provided:

"3. This transaction shall be closed as soon as reasonably possible, but shall be extended to December 15, 1978 if necessary for Cook to obtain the down payment. * * *"

The agreement further said:

"The parties hereto have reached agreement for the sale of all of the stock of DESLER, and their entire interest in and to HOLLADAY PLACE, INC. back to the Corporation and to Victor H. Cook.

"The purpose of this Agreement is to bind the parties to the terms of sale by the mutual promises and covenants herein contained until formal transfer papers can be prepared and executed.

"By affixing their signatures hereto, it is expressly agreed that this is only an Earnest Money Agreement and that a formal contract will be entered into at a later time which will contain specific terms and agreements not herein contained and the parties acknowledge and intend to be bound by all the terms herein contained."

Shortly after signing the earnest money agreement, plaintiff completed arrangements for financing the $30,000 down payment. The corporation's attorney, at plaintiff's request, prepared a stock purchase security agreement. Defendants then indicated that they would require additional terms in the stock purchase agreement. In a draft prepared by defendants' attorney, the additional terms, different from the earnest money agreement, were outlined: 1) plaintiff could not refinance until $60,000 had been paid on the purchase price; 2) after the third year following the year of sale, 50 percent of the net operating profit (if any) would be paid to defendants until the entire note was paid; 3) plaintiff would become controlling shareholder only after payments to defendants totalled $80,000, including the $30,000 down payment, and that after the payment of $80,000 Mr. Desler would act in an advisory capacity only at the request of plaintiff; and 4) the defendants would not resign as officers and directors until the $80,000 had been paid on the purchase price.

During November, 1978, because of the delay in closing the sale, plaintiff requested a feasibility opinion from Luoma. Luoma, who was aware that plaintiff was using the letter to obtain financing and that a copy would be forwarded to plaintiff's bank, provided a letter to plaintiff. None of the defendants was aware of the letter; they never asked Luoma for a feasibility opinion. The parties dispute whether the letter to plaintiff was intended by

Luoma as the feasibility opinion referred to in the earnest money agreement.[4]

In a letter dated November 22, 1978, defendants insisted on the additional terms which they had inserted in the draft of the stock purchase security agreement:

"\* \* \* \* \*

"The Deslers will accept no less than the proposals outlined in paragraph 10 of our draft nor will they resign as directors until after the $80,000.00 has been paid.

"\* \* \* \* \*

"I am sure that Mr. Cook has advised you that he paid Mr. Desler nothing upon signing the earnest money agreement and that the earnest money agreement specifically provides only that the agreement binds the parties to the terms of the sale and that the final Contract would contain certain provisions not contained in the earnest money agreement. I would advise you further that the Deslers are the sellers not Mr. Cook and if the terms are not agreeable to Mr. Cook it is not necessary that the sale take place. The Deslers are not willing to sell without protecting their capital investment and, frankly, are not concerned whether the matter ever closes unless they are satisfied with the terms."

Plaintiff objected to the additional requirements and instructed his attorney to prepare the papers consistent with the earnest money agreement for closing. Defendants were later advised that the papers had been prepared for closing, but the sale was not completed. This suit followed.

Plaintiff makes three arguments in claiming that the trial court erred in denying specific performance. First, he asserts that the earnest money agreement constituted a valid, binding contract which he alleged and proved he was ready, willing, and able to perform. Secondly, he argues that defendants repudiated the contract by demanding provisions in the stock purchase security agreement that would have changed the agreed terms of the earnest money agreement and by refusing to complete the transaction unless the specific agreed terms were changed. Finally, he urges that the condition requiring the accountant's feasibility opinion was for defendants' benefit and was waived

---

[4] Luoma's testimony on the issue is, to say the least, confusing. Because of our disposition of the case, we need not resolve the issue.

by their failure to take steps to obtain the opinion[5] and that plaintiff was also ready, willing and able to fulfill the alternative provision by paying the insurance premiums on his life. Defendants claim that the earnest money agreement was merely a preliminary agreement intended to be followed by a formal contract and is not, therefore, enforceable by specific performance.

■     Recent Oregon cases recognize that an earnest money agreement may represent a complete agreement between the parties or may only be a rough draft intended to be followed by a final contract. *Higgins v. Bonnett,* 282 Or 725, 728, 580 P2d 180 (1978); *Phillips v. Johnson,* 266 Or 544, 552, 514 P2d 1337 (1973); *Sunland Investment v. Bill Wolfe Ranches,* 46 Or App 145, 610 P2d 1253 (1980); *Pittman v. Thompson,* 45 Or App 627, 608 P2d 1223 (1980). In *Wagner v. Rainier Mfg. Co.,* 230 Or 531, 371 P2d 74 (1962), the Supreme Court stated:

> " '* * * Normally the fact that parties contemplate the execution of a final written agreement justifies a strong inference that the parties do not intend to be bound by earlier negotiations or agreements until the final terms are settled. * * * Said fact does not conclusively establish such intention. * * * If all the material terms which are to be incorporated into a future writing have been agreed upon, it may be inferred that the writing to be drafted and delivered is a mere memoraial of the contract, which is already final by the earlier mutual assent of the parties to those terms. * * *' " (Quoting *Rosenfield v. United States Trust Co.,* 290 Mass 210, 216, 195 NE 323, 122 ALR 1210 (1935).) 230 Or at 540.

Although the earnest money agreement in the present case mentions another and future agreement, defendants do not claim that the agreement did not contain the essential terms of the agreement between the parties or that it is not sufficiently definite to be enforceable. *See Van v. Fox,* 278 Or 439, 564 P2d 695 (1977); *Southworth v. Oliver,* 284 Or 361, 587 P2d 994 (1978); *Seal v. Polehn,* 284 Or 259, 586 P2d 345 (1978); *Russo v. Factory Finished Homes,* 43 Or App 103, 602 P2d 320 (1979). The earnest money agreement stated that the parties have "reached

---

[5] Plaintiff, of course, also claims that the letter he received from Luoma constituted the feasibility opinion.

agreement" and that its purpose was to "bind the parties to the terms of the sale by mutual promises and covenants herein contained until formal transfer papers are prepared." Defendants point to the fact that the agreement also stated that "this is only an Earnest Money Agreement and that a formal contract will be entered into at a later time which will contain specific terms and agreements not herein contained * * *." But that sentence continues: "* * * and the parties acknowledge and intend to be bound by all the terms herein contained."

In *Fleck v. Steinbeck,* 44 Or App 161, 164, 605 P2d 717 (1980), we quoted with approval the trial court's conclusion of law:

> "This Court in a long line of cases has adhered to the rule that before there can be a valid contract, there must be a meeting of the minds as to all of its terms; that nothing can be left for future negotiation, and that if any portion of the contract is not agreed upon, or if no method is agreed upon by which such a term or provision can be settled, there is no contract."

It is not unusual for parties to provide that some terms of a sale transaction remain unspecified until a later time, or that subsidiary details of an agreement are not spelled out in full in an earnest money agreement. *Cf. Howard v. Thomas,* 270 Or 6, 526 P2d 552 (1974); *Van v. Fox, supra.* It is, of course, an established rule that:

> "In a suit for specific performance, the contract itself must be specific enough to serve as the foundation of a specific decree. The court cannot be wiser than the parties themselves or go more into detail than they have marked out for their conduct, or make a new contract for them."
> *Feenaughty v. Beall,* 91 Or 654, 667, 178 P 600 (1919).

*See also Sunland Investment v. Bill Wolfe Ranches, supra.* In this instance, the parties signed a very detailed earnest money agreement encompassing the essentials of the sale. They clearly intended to be bound by that contract. The fact that the parties agreed there would be a future contract with "specific terms and agreements not herein contained" does not affect the essential agreement. Ancillary matters necessary for closing were obviously required, but that does not detract from the intent to be bound by the agreement. Accordingly, we agree with the trial court's finding that

there was a meeting of the minds and that the earnest money agreement was a binding contract.

■ Defendants contend, however, that plaintiff cannot recover because he failed to fulfill the condition precedent: payment of the insurance premiums.[6] They also claim that a feasibility opinion was never obtained from the CPA, Luoma. The general rule setting forth the requirements which a plaintiff seeking specific performance must meet was stated in *Percy v. Miller et al,* 197 Or 230, 239-240, 251 P2d 463 (1952):

> "It is a general rule of equitable jurisprudence that a plaintiff coming into equity for specific performance must show not only that he has a valid, legally enforceable contract, but also that he has complied with its terms by performing or offering to perform on his part the acts which formed the consideration of the undertaking on the part of the defendant, *or that he is ready, able, and willing to perform his obligations under the contract, in their entirety,* * * *." (Emphasis added.)

*See Gaffi v. Burns,* 278 Or 327, 563 P2d 726 (1977). Although repudiation of the earnest money agreement by defendants may have excused plaintiff's failure actually to have paid the insurance premiums,[7] it did not excuse plaintiff from pleading and proving that he was ready, willing and able to perform his obligations under the agreement. *Gaffi v. Burns, supra,* 278 Or at 333.

■ Applying that rule to the facts of this case, we conclude that plaintiff satisfied the requirements. The complaint alleged, and plaintiff offered evidence and testimony sufficient to prove, the necessary allegation that he was ready, willing and able to pay the insurance premiums when they fall[8] due. Therefore, plaintiff was entitled to a decree of specific performance.

---

[6] Neither party questions whether those conditions were in fact conditions precedent. *See Dan Bunn, Inc. v. Brown,* 285 Or 131, 590 P2d 209 (1979).

[7] If tender of performance by plaintiff would have been a vain and useless act, no such tender was required. *Wittick v. Miles,* 268 Or 451, 454, 521 P2d 349 (1974). *Cf. Guillory Corp. v. Dussin Investment,* 272 Or 267, 275, 536 P2d 501 (1975).

[8] The testimony was that prior to the closing date the current insurance premiums had been paid by the corporation and that none were at that time owing. Plaintiff testified that he was ready, willing and able to pay premiums when due.

Reversed and remanded with instructions to enter a decree consistent with this opinion.